## Maus *et al. versus* Maus *et al.*

1. A devise was : " My sister Elizabeth shall have the whole and sole occupation, possession, use and benefit of my whole estate during her life, and to have the whole possession without control, except so much of the proceeds as may be necessary for the education of George," &c.　By this a freehold estate for life in testator's land vested in Elizabeth.

2. The will provided that after the death of Elizabeth an annuity should be paid to two of the testator's brothers for life " out of the product of the estate," to be expended for their benefit under the direction of two other brothers ; after the death of Elizabeth the rents to be appropriated to the above legacies and the balance to relieve any of the brothers in necessity ; after the death of all the brothers his land to be sold and the proceeds to be divided among such of his " lawful heirs as might then be living."　Elizabeth was appointed executrix, but no one was named to sell the land.　*Held*, that the trust to rent the land and apply the proceeds for the indigent brothers did not by operation of law vest in an administrator *c. t. a.*

3. No trustee having been named in the will, the trust was to be filled by the court on the application of any party in interest.

4. The trustee so appointed would have power by the terms of the will to enter and take the rents, &c., for the purpose of creating the trust fund for the necessitous brothers ; and any one in interest, however remote, might compel such trustee to enter, if necessary to bar the statute.

5. The land was, in the life of Elizabeth, sold by the sheriff to a brother

[Maus v. Maus.]

for a debt of the testator; he entered under the sale, which proved to be void; he was the last survivor and lived twenty-five years after Elizabeth. *Held*, that his entry was under color of title and was adverse to all interests under the will; that the Statute of Limitations ran in his favor from her death and was not postponed by the trust for renting or the power to sell for distribution.

6. The statute having commenced to run against the living heirs of the testator and the surviving brothers, would run over the subsequent power of sale for distribution.

7. The power of sale of the administrator *c. t. a.* with his auxiliary estate, to execute the power under the Act of February 24th 1834, would not be such distinct estate in remainder, with accruing new right of entry postponed till the death of the survivor of the brothers, as would bar the running of the statute.

8. The parties in interest having the right to fill the trust and compel an entry, are not parties in expectancy, who could not enter until their estate fell in.

9. The powers to rent and sell, though for different purposes, are not like distinct estates in succession, whose owners have no right of entry till the succession takes effect.

10. Smilie v. Biffle, 2 Barr 52, followed.

January 25th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Montour county*: Of September Term 1875, No. 4.

This was an action of ejectment for a tract of about 144 acres of land in Valley township, Montour county, formerly Mahoning township, Columbia county, brought by Charles Maus and Andrew J. Maus against Philip F. Maus and William Robison. The writ was issued July 20th 1874.

The land in question originally belonged to Philip Maus, from whom, by deed dated June 18th 1810 and will proved August 11th 1818, it passed to George Maus. He by his will, dated August 8th 1826, gave and devised to his sister Elizabeth, her heirs and assigns, all his property, real and personal, and made her the executrix of his will. On the 30th of March 1827, he made a codicil to his will as follows:—

"It is my will that my namesake, George Maus, the son of my brother Lewis Maus, shall have a sufficient English education to render him fit for the study of medicine and surgery and to be also educated as a doctor of medicine, if it should please God to spare him health and life, at the expense of my estate, to be paid by my executrix at such times as may be required for the purposes aforesaid. It is also my will that my sister Elizabeth shall have the whole and sole occupation, possession, use and benefit of my whole estate during her natural life, and to have the whole possession without control except so much of the proceeds as may be necessary for the education of George Maus, aforementioned. It is also my will that, after the death of my sister Elizabeth, my brothers Philip Maus and Jacob W. Maus, if living, shall be paid

[Maus *v.* Maus.]

fifty dollars each yearly as long as they live, out of the product of my estate ; this yearly legacy to be expended for their benefit by and under the direction of Lewis Maus and Joseph Maus or the survivor of them.   It is my will that the education of my nephew and namesake, George Maus, be under the direction of Dr. David Petrikin, or such person or persons as he may name, and to commence at such time as he may direct.   It is my will that my plantation, after the death of my sister Elizabeth, shall be rented after the best manner, and the rents appropriated to the payment of the legacies aforementioned, and the balance, if any, kept as a fund for the purpose of relieving any of my brothers that may become reduced by sickness or age so as to be unable to procure their own support and not have the means of supporting themselves, and then only so much of it to be used as may be necessary for their relief.   It is also my will that, after the decease of all my brothers and my sister, my estate be sold by public sale and the proceeds, after paying all legacies, to be divided amongst such of my lawful heirs as may then be living, according to law.   It is my understanding and I now specially direct it, that after my nephew George Maus has finished his education and become doctor of medicine, he be paid two hundred and fifty dollars out of the proceeds of my estate to enable him to commence the practice of his profession."

The will and codicil were proved April 9th 1828 and letters testamentary granted to Elizabeth Maus, the executrix named in the will.

The case was tried June 7th 1875, before Elwell, P. J.

On the trial it appeared by the evidence of plaintiffs that the testator died unmarried and without issue April 4th 1828, leaving as his heirs the issue of a sister Susannah who had died in his lifetime ; Philip Maus, a brother, who died August 1829, leaving a son who is also dead; Charles Maus, a brother, who died April 7th 1830, leaving issue ; Samuel Maus, a brother, who died April 25th 1833, leaving issue; Elizabeth Maus, a sister and his executrix, who died October 20th 1842, unmarried and without issue ; Jacob W. Maus, a brother, who died September 3d 1847, leaving issue ; Lewis Maus, who died August 21st 1854, leaving issue ; and Joseph Maus, who died July 26th 1867, leaving issue, viz. : Philip S. Maus, one of the defendants, and the issue of a deceased son, John M. Maus.

On the 29th of November 1873, administration *d. b. n. c. t. a.* of George Maus was granted to Thomas J. Vanderslice.   On the 13th of December 1873, Vanderslice, as administrator, &c., presented a petition to the Orphans' Court of Columbia county, setting forth the provisions of the codicil to the testator's will for the sale of his real estate, and the death of all his brothers and sisters, and praying the court to grant him an order to sell the real estate of

[Maus v. Maus.]

the testator; an order of sale was awarded in accordance with the prayer. To the February Term 1874, the administrator returned that he had sold the land, containing 163 acres 62 perches, to Andrew J. Maus and Charles Maus (the plaintiffs in this suit), for $13,071; the sale was confirmed February 4th 1874, and deed, dated June 13th 1874, from the administrator, delivered to the purchasers. George Maus, the nephew of the testator, never studied medicine.

The defendants gave evidence of the following facts, under objection and exception:—

On the 10th of January 1833, Lewis Maus, to the use of D. M. Leisenring, recovered a judgment against Elizabeth Maus, executrix, &c., of George Maus, deceased, before W. Wilson, Esq., a justice of the peace; an execution was issued by the justice and returned "No goods." This judgment, &c., were certified to the Court of Common Pleas and entered there August 15th 1833; a fi. fa. was issued on it to November Term 1833; the sheriff returned that he had levied on tract of land (that in dispute being part), containing 160 acres, and that on the 19th of October the proceedings on the writ were stayed by the use plaintiff.

To November Term 1836, an alias fi. fa. was issued returnable on the 3d Monday of November (November 21st). The sheriff returned that he had levied on the same tract as above; "condemnation confessed and inquisition waived and certificate filed in court October 12th 1836." The land was advertised to be sold by the sheriff on the 21st of November 1836. On the 5th of November 1836, Elizabeth Maus and Joseph Maus entered into an agreement reciting that "the plantation of the said Elizabeth," situate in Mahoning township, was advertised for sale by the sheriff; it was then agreed that if Joseph Maus should purchase the plantation at sheriff's sale and pay all the liens, the costs and other debts of Elizabeth, and permit Elizabeth to reside on it during her life and enjoy other privileges specified, she would allow Joseph to have all the proceeds of the sale of the plantation that should not be required to pay the said liens, costs and debts.

On the 21st of November the sale was adjourned until the 23d, when the land was sold to Joseph Maus for $5000. The sheriff's deed was acknowledged November 25th 1836. On the 20th of January 1837, the sheriff received from Joseph Maus "$760 and Elizabeth Maus's receipt for $4240 in full of the purchase-money, sold as the estate of George Maus." On the 18th of April the sheriff received from Joseph Maus $83.37 "in part of the purchase-money arising from the sale of the real estate of George Maus, deceased." On the 2d of November, he received from "Joseph Maus $61.23, the amount of George A. Frick's debt v. George Maus's estate." Elizabeth Maus by her will, proved October 25th 1842, directed the residue of her estate to be invested and the

[Maus *v.* Maus.]

interest appropriated to the support and use of her brother Jacob during his life, and at his death the principal sum to be divided amongst his daughters.

From November 27th 1840 to June 11th 1858, Joseph Maus conveyed to different persons, a number of parts of the tract late of George Maus, deceased, purchased by him at the sheriff's sale; the deeds of conveyance were duly recorded.

Joseph Maus moved to the tract on the 1st of April 1839 and lived there till June 25th 1866; after he left it, it was occupied by his tenant; the persons who bought the different portions of the property sold by him went into possession when they bought. He opened limestone quarries in 1839 and continued to quarry until 1859 or 1860. Charles Maus and Andrew F. Maus, the plaintiffs, lived very near the quarries during the time they were worked. Joseph Maus built a barn and repaired the house in 1839 and made other visible improvements on the property; from the time of his purchase he claimed the land as his own and appropriated all the products to himself; both plaintiffs worked for him on the farm. Since the death of Joseph Maus the farm had been in the possession of Philip F. Maus, his son, one of the plaintiffs, by William B. Robison, his tenant, the other plaintiff. Large quantities of limestone and iron ore had been taken from the property, by Joseph Maus, and his son Philip after his death. There was a large amount of evidence by the defendants for the purpose of showing a notorious, continued adverse possession of the land bought at sheriff's sale, by Joseph Maus and those claiming under him.

Joseph Maus, by his will, proved July 30th 1867, after devising certain lands in Illinois for the widow and children of a deceased son, devised all the residue of his estate to his son Philip F. Maus (one of defendants), charged with the payment of an annuity of $60 to Jane Blue during life.

In rebuttal, the plaintiffs gave evidence that Elizabeth Maus had never settled an account of her administration of the estate of George Maus; that Charles Maus, one of the plaintiffs, attained full age on the 29th of April 1841, and Andrew J. Maus, the other plaintiff, on the 15th of September 1852.

The following are points of the plaintiffs with their answers:—

3. The agreement between Joseph Maus and Elizabeth Maus, dated the 5th day of November 1836 (given in evidence by the defendants), and the purchase, in pursuance of the said agreement, of the land late of George Maus, at the sheriff's sale made by virtue of the writ of alias fieri facias, on the 23d day of November 1836, for $5000, and the payment to the sheriff, on the 20th of January 1837, of $760 in money and the delivery to him of Elizabeth Maus's receipt for $4240, as payment of said purchase-money, was a fraud upon the devisees entitled under the last will

and testament of the said George Maus, to the proceeds of the sale of the tract of land ordered by him, in the codicil to his will, to be sold after the demise of all of his brothers, and that the said sheriff's sale and deed for the land did not vest in Joseph Maus or in the defendants, who claim under him as volunteers, any title which can or ought to prevail against that of the plaintiffs given in evidence.

Answer : "The counsel for the plaintiffs contend and ask us to charge that the agreement in evidence of the date of November 5th 1836, between Joseph Maus and Elizabeth Maus, was, in law, a fraud upon the other devisees under the will of George Maus, and that the sheriff's sale and deed to Joseph Maus did not vest the title. I have already said to you that the title did not pass by that sale and deed, but I decline to declare as a matter of law that the purchase by Joseph Maus was a fraud. The sale was made under a process issued upon a judgment of the court for a debt of the testator, not under the control of Joseph Maus. The statute authorizing sales upon writs of fi. fa. had been lately passed. In other counties, as well as in Columbia, sales were being made after the return day of the writs, as decisions of the Supreme Court show, evidently in the belief that such sales were valid. It does not appear that persons were prevented from bidding at the sale by anything said or done by Joseph Maus, but that the property was sold at its full value. The agreement in regard to the fund to be raised by the sale after payment of the debts of the testator, did not prevent Joseph Maus from acquiring title under the Statute of Limitations."

4. The Statute of Limitations did not commence to run against the title of the plaintiffs until after the death of Joseph Maus, and no possession of the lands by Joseph Maus, or by the defendant since his death, or improvements made by him or them, or claims or acts of ownership of the same by him or them, proved in this cause, will enable the defendants to resist the title of the plaintiffs.

Answer: "It is also contended for the plaintiffs that the Statute of Limitations did not begin to run until after the death of Joseph Maus in 1867, and that no possession by him or by defendants since his death, or improvements made by him or them on the land, or claims or acts of ownership proved in this case, can enable the defendants to resist the title of the plaintiffs, and that under all the evidence the plaintiffs are entitled to a verdict in their favor.

"I decline so to charge. Joseph Maus was not made trustee by the will of George Maus. He was authorized to see to the expenditure of the fifty dollars a year for the benefit of his brothers, Philip and Jacob W., but he was not authorized to take possession of the land for that purpose, nor for the purpose of raising a fund for the relief of himself or his brothers, nor was he authorized to

[Maus *v.* Maus.]

decide in regard to his or their necessities.   Under the will he held no fiduciary character or trust which prevented him from acquiring title by a notoriously adverse, hostile and uninterrupted possession for thirty years, or by twenty-one years of such possession.   The sheriff's deed of 1836 is evidence of the extent and character of defendants' claim, but for no other purpose."

The following are defendants' points, which were affirmed :—

1.  If from the evidence in the cause the jury find that after the sheriff's sale in November 1836, to Joseph Maus, the said Joseph Maus took possession of the premises, and that afterwards and after the death of Elizabeth Maus in 1842, the said Joseph Maus and Philip Maus, who claims title under him, continued in the hostile, adverse and continuous possession of the premises in dispute in this action, for a period of thirty years and upwards prior to the bringing of this suit, there can be no recovery by the plaintiffs and the verdict should be for the defendants.

2.  If the jury find that Joseph Maus and Philip Maus had adverse, hostile and continued possession of the land in dispute for a period of twenty-one years, after the death of Elizabeth Maus, and prior to the bringing of this suit, there can be no recovery by the plaintiffs, and the verdict should be for the defendants.

The court, after stating the evidence and referring particularly to the sheriff's sale, charged:— * * *

" I have stated to you the particulars of this sale as they appear upon the record, not because title was thereby conveyed to Joseph Maus, but for.the purpose of showing the extent and character of his claim in its origin.   The sale was invalid and did not pass the title because it was made after the return day of the writ.   The Act of 1836, then lately passed, authorized a sale upon a fi. fa. before the return day thereof, where the defendant, by writing filed, waived inquisition.   The Supreme Court held that the custom which had prevailed in regard to sales upon writs of venditioni exponas did not warrant a sale upon a fi. fa. after the return day. As the law stood at that time the sale in question was made without authority and the deed of the sheriff did not pass the title.

" It appears, however, by the undisputed evidence, that Joseph Maus, not long after his purchase, and claiming under it, took possession and control of the farm.   In 1839 he moved on it, built a bank barn and gave the' house a general repairing—he cleared land, erected a blacksmith shop, corn crib, &c., and according to the testimony of Philip Maus, put the farm in a first rate state of cultivation.   He opened limestone quarries and iron ore mines and took therefrom large quantities of each.   He claimed the title under his purchase; conveyed portions of the land by deeds made and recorded more than thirty years before this suit was brought, to persons who entered into possession and held it ever since—not portions of the land now in dispute, but other parts

[Maus v. Maus.]

of the land included and claimed under the sheriff's sale. He neither accounted for profits, nor was such account demanded of him. For thirty-two years after the death of Elizabeth Maus, he and those holding under him held the exclusive possession—a possession which, under the evidence, was adverse to all the world, unless his situation in regard to the estate was such as prevented him from holding adverse to claimants under the will of George Maus. * * *

["I have stated substantially the whole case as it appears in the evidence, but after all, the case is narrowed down to a single point for your consideration. If, from the evidence, you find that after the sheriff's sale to Joseph Maus, he took the possession of the lands in dispute, and after the death of Elizabeth Maus he and Philip Maus, who claims title under him, continued in hostile, adverse and notorious possession for a period of twenty-one years (and upwards of thirty or more years) prior to the bringing of this suit, the plaintiffs cannot recover, and the verdict should be for the defendants, otherwise for the plaintiffs."] * * *

The verdict was for the defendants.

The plaintiffs removed the record to the Supreme Court by writ of error.

They assigned for error :—

1–3. The rulings of the court below on questions of evidence.

4, 5. The answers to the plaintiffs' points.

7, 8. Affirming the defendants' points.

9. The part of the charge in brackets.


*J. G. Freeze* and *J. W. Comly*, for plaintiffs in error.—The Statute of Limitations did not begin to run against the plaintiffs until after the death of Joseph Maus, because he being the survivor of all the brothers of the testator no entry could be made on the land before his death, by the legatees of the proceeds or by any person for their benefit: Hall *v.* Vandegrift, 3 Binney 374 ; Shepley *v.* Lytle, 6 Watts 500 ; Marple *v.* Myers, 2 Jones 122 ; Gernet *v.* Lynn, 7 Casey 94. The land having been directed by the will to be sold a conversion took place at the death of Joseph : Brolasky *v.* Gally, 1 P. F. Smith 509 ; Chew *v.* Nicklin, 9 Wright 84. The legatees took no estate in the land, but only money. They could have raised an administrator *c. t. a.* on the death of Joseph to effect an actual conversion and he could have maintained ejectment against Philip F. Maus, who was then in possession : Act of February 24th 1834, sects. 12th, 13th and 67th, 1 Br. Purd. 418, 419, pl. 71, 72, 74 ; Kirk *v.* Carr, 4 P. F. Smith 285 ; or he could sell the land under the direction of the Orphans' Court, leaving to the purchaser to bring ejectment : Keefer *v.* Schwartz, 11 Wright 504. A power in a will to sell for distribution belongs to the executor ; Evans *v.* Chew, 21 P. F. Smith 47 ; Waters *v.* Mar-

[Maus *v.* Maus.]

gerum, 10 Id. 39; Ross *v.* Barclay, 6 Harris 179. The will creates an estate in remainder in the survivor of testator's brothers; the statute would not commence running until his death; the trust created by the codicil would not fail for want of a trustee: Eyrick *v.* Hetrick, 1 Harris 488; Perry on Trusts, sect. 240; Sonley *v.* Clockmakers' Co., 1 Brown C. C. 81; Jenks *v.* Backhouse, 1 Binney 91. Any party interested could apply to the court for the appointment of a trustee: Act of June 14th 1836, sect. 23, 2 Br. Purd. 1418, pl. 23. During the continuance of the remainder in trust, neither the heirs claiming the proceeds of sale nor an administrator *c. t. a.* could meddle with the land: Ross *v.* Barclay, Waters *v.* Margerum, Evans *v.* Chew, *supra;* consequently the possession of Joseph Maus could not be adverse: Marple *v.* Myers, 2 Jones 122. The agreement between Elizabeth and Joseph and their subsequent conduct in pursuance of it, was a fraud on the residuary legatees; and the statute would not run against them in favor of Joseph: Jones *v.* Conway, 4 Yeates 109; Price on Limitations 120; Perry on Trusts, sect. 861.

*E. H. Baldy* and *S. Linn,* for defendants in error.—Elizabeth took a legal life-estate in the testator's land, burdened with the trust for the education of the nephew; at her death the remainder passed in trust for his education and for the brothers Philip and Jacob, &c.; this trust continued till the death of the survivor of the brothers and sisters. The direction to sell after the last death was positive and worked a conversion at the death of the testator: Allison *v.* Wilson, 13 S. & R. 330; Morrow *v.* Breniser, 2 Rawle 185. Until the death of the survivor, the legal title was outstanding somewhere to support the trust in the income, the trustee not being named in the will or supplied by the law. The rule that the statute does not bar a trust-estate holds only as between trustee and *cestui que trust:* Llewellyn *v.* Mackworth, 2 Eq. Cas. Ab. 579; Hill on Trustees 267; Price on Limitations 152; Smilie *v.* Biffle, 2 Barr 52; Cooper *v.* Brockway, 8 Watts 162. Although an executor may not be designated by the will to sell land ordered to be sold, he may maintain ejectment for it without authority of the Orphans' Court: Kirk *v.* Carr, 4 P. F. Smith 285; and an administrator *c. t. a.,* under the 12th, 13th and 67th sections of the Act of February 24th 1834, *supra,* has the same power. When Joseph took adverse possession of the land, the statute began to run; the legatee's interest under the will was not land, but money; the legal estate was barred by twenty-one years' possession; it fell and the equitable interests which it was intended to support fell with it: Hall *v.* Vandegrift, 3 Binney 374; Baldridge *v.* McFarland, 2 Casey 338.

Chief Justice Agnew delivered the opinion of the court, February 7th 1876.

Under the will and codicil to it of George Maus, a freehold estate for life was vested in his sister Elizabeth. At her death the property was to be rented for the purpose of creating a fund, out of which the testator's brothers should be maintained who were reduced to want by sickness or age. On the decease of all his brothers the property was directed to be sold for distribution among such of his lawful heirs as might then be living. According to the decisions in Ross v. Barclay, 6 Harris 179; Waters v. Margerum, 10 P. F. Smith 44; and Evans v. Chew, 21 Id. 47, and other cases, a trust or power given to executors *virtute officii*, not for the purpose of administration or distribution, does not descend to the administrator with the will annexed, under the Act of March 12th 1800, or the Act of 24th February 1834. The first trust in the will, to rent the premises to create a fund for the support of the indigent or aged brothers, therefore, was not one which would by operation of law vest in the administrator with the will annexed. As the testator named no trustee of this trust, it was one to be filled by the proper court, on application of any of the parties in interest. By the terms of the will the trustee (on his appointment) would have a power to enter on the land and take the rents, issues and profits, in order to create the trust fund contemplated for the brothers in necessitous circumstances. This being so, it was in the power of any one having an interest in the estate to procure the appointment of a trustee, and then compel him to enter, if an entry be necessary to bar the Statute of Limitations against a stranger who had entered into possession: Smilie v. Biffle, 2 Barr 52. Had there been an existing trustee at the death of Elizabeth Maus, that case is a direct authority that not only the legal estate, but the trust itself, would be barred by the statute, unless entry be made in time to bar the statute. But the fact that there was no existing trustee could make no difference in the case, for the power to fill the trust by appointment being plenary, and at the will of the persons in interest, they stood in a position to be visited by their own laches, as much as if there was a trustee. Not only the surviving brothers, after the death of Elizabeth, whose interest was most immediate, but any of the testator's lawful heirs, whose interest was direct, though more distant in the time of enjoyment, would have the power to procure the appointment of a trustee, and to compel him to enter into possession, to save the estate from the bar of the statute. The fact, therefore, that the power to sell for distribution did not take effect until the death of the last surviving brother, that is to say, twenty-five years after the death of Elizabeth, was no reason to arrest the running of the statute or postpone its operation. For the same reason the fact that the power to sell for distribution would descend to the administrator with the will annexed, according to the case of Evans v. Chew, 21 P. F. Smith 47, would not prevent the running of the statute. The statute

[Maus *v.* Maus.]

having commenced to run against all the parties, the living heirs of the testator, as well as the surviving brothers interested in the first trust, would run over the subsequent power of sale for distribution, even if it should be held that the first trustee must give way to an administrator with the will annexed, to be raised to execute the power of sale. His power of sale, even with the auxiliary estate, given by the Act of 1834, to enable him to execute the power, would not be such a distinct estate in remainder, with an accruing new right of entry, postponed till the death of the last surviving brother, as would bar the running of the statute. The parties in interest in the execution of the power of sale having, as we have seen, the right to fill the trust and compel an entry, do not stand in the attitude of parties having an estate in expectancy, who could not enter until their estate fell in. The powers under this will to rent and to sell, although for different purposes, do not resemble distinct estates in succession, whose owners have no right of entry until the succession takes effect. We are of opinion, therefore, that the Statute of Limitations having commenced to run in favor of the purchaser at sheriff's sale at the death of Elizabeth Maus, was not arrested or postponed either by the trust for renting or the power given to sell. The entry of the purchaser being under the sheriff's deed, which was at least color of title, was adverse to the interests of all who claim under the will; and though it did not commence to run against the remainder until the death of Elizabeth, it ran out its term long before this action was commenced.            Judgment affirmed.