[Dallas Compress Co., et al. v. Smith.]

# Dallas Compress Co., *et al. v.* Smith.

*Bill to Quiet Title and for an Accounting.*

(Decided December 17, 1914.   67 South. 289.)

1. *Husband and Wife; Ante-Nuptial Agreement; Power of Sale.*— An ante-nuptial agreement providing that the future wife was "empowered to sell (the property settled on her) or exchange the same, or any part thereof, and to invest the same in other real estate or securities, and when so sold or invested in securities, the real estate so received or investments made with the approval of" the intended husband, makes the approval of the husband a condition precedent, not only to reinvestment of proceeds after sale or exchange, but also to the sale or exchange itself.

2. *Deeds; Wills; Estates Created.*—A devise or a deed to a man and his children, he being childless at the time the devise or conveyance takes effect, passes an estate tail, converted by statute, into an unqualified fee.

3. *Husband and Wife; Ante-Nuptial Agreement; Construction.*— Where a marriage settlement leaves land to a future wife for the maintenance and support of any child she may have, with remainder over, and with a limitation contingent upon failure of issue, the donor did not intend to give an unqualified fee to the wife, but only a life estate.

4. *Same; Unauthorized Execution of Power; Laches.*—Where complainant's mother held land for life under a marriage settlement for her own use and support, and his support, and sold such lands in a manner not authorized by the power of sale under the settlement, although under the settlement a trust was to be implied for complainant's support and maintenance, co-extensive in duration with the mother's life estate, he cannot enforce such an equitable charge against the lands in the hands of defendant who purchased and held them for thirty years; complainant having been of age for ten years of the thirty, and not having asserted his alleged equitable right, such right was barred by laches.

5. *Life Estate; Title of Remaindermen; Conveyance by Life Tenant.*—The title of a remainderman cannot be destroyed by any act of the life tenant, and an attempted conveyance by the latter of a fee passes only in the life estate.

6. *Same; Adverse Possession.*—Neither the statute of limitations nor the prescriptive period of twenty years runs against a remainderman until he has a right to sue at the termination of the particular estate.

7. *Remainders; Duty to Protect.*—A remainderman need not sue in equity until his interest comes into possession, unless the alleged wrong is presently efficient, according to the valid limitation of the title under which he claims, to cut off his interest in the remainder.

8. *Same; Laches.*—Where the life tenant has purported to convey a fee, the remainderman may maintain a bill to remove a cloud on his legal title without affecting the legitimate interest of the life tenant, but it is not laches for him to fail to do so; a defect in the purchaser's title being apparent under the facts, for where there is no assent to or acquiescence in possession in fact, adverse, there is no laches.

9. *Vendor and Purchaser; Bona Fide; Notice; Chain of Title.*— Where the mother of complainant, holding under a conveyance of a life estate in lands with remainder over to complainant, conveyed to a grantor of defendant in violation of her powers of sale, such defendants are conclusively charged with notice thereof from the time of their purchase, since complainant's title was by purchase and the lack of power was apparent from the face of the muniments of title, under which defendants claim.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY.

Bill by James Q. Smith against the Dallas Compress Company and others, to quiet title to land, and for an accounting. Decree for complainant, and respondents appeal, complainant also filing cross appeal. Affirmed on both appeals.

Complainant alleges that: He is the son and only child of James Q. Smith, Sr., and was at the time of the death of said James Q. Smith, Sr., his only heir at law; that in July, 1879, said Smith, Sr., owned the following described real estate in the city of Selma (here follows the description of a number of lots): and that on July 27, 1879, said James Q. Smith, and Marie Louise Fair, both then residing in the city of Montgomery, Ala., were engaged to be married to each other, and in contemplation of such marriage, and in consideration threof, and for other valuable consideration, the said James Q. Smith duly executed and delivered to the said Marie Louise Fair a deed, wherein and whereby he bargained, sold, and conveyed to the said Marie Louise Fair the said lots above described, for the purposes therein stated, which deed was duly filed for record in the office of the probate judge of Dallas coun-

ty, where said land was situated, on June 16, 1882, and recorded on said date. The following being a copy thereof:

"This antenuptial contract and marriage settlement made and entered into this the 22d day of July, in the year 1879, by and between James Q. Smith of the first part, and Marie Louise Fair of the second part, all of the city and county of Montgomery, and state of Alabama, witnesseth:

"That whereas a marriage is about to be solemnized between the parties of the first part and second part, year 1879, by and between James Q. Smith of the first should make provisions for the maintenance and support of the party of the second part and for the maintenance and support of any child or children she may have of said marriage.

"Now, therefore, in consideration of the said marriage, and in the further consideration of twenty dollars, the receipt of which sum is hereby acknowledged, the party of the first part has this day bargained, sold and conveyed, and by these presents doth bargain, sell, and convey unto the party of the second part for her maintenance and support, and for the maintenance and support of any child or children she may have of such marriage, the following described lots of land situate, lying and being in the city of Selma, county of Dallas, in the state of Alabama, and known as: (Here follows description of the same lots described in the bill.)

"To have and to hold the same unto the said party of the second part for the purposes before stated and to the sole and separate use and benefit of the party of the second part free from all debts, liabilities, and engagements of the party of the first part, and from all claim or claims of persons who set up any right, title or interest therein through the party of the first part;

the party of the second part is expressly empowered to sell the same or exchange the same or any part thereof, and to invest the same in other real estate or securities, and when so sold or invested in securities the real estate so received or investments made with the approval of the party of the first part in the possession of the party of the second part in like manner to be free from all debts, liabilities and engagements of the party of the first part, and from all claim or claims set up by any person who derived any right, title or interest thereto through the party of the first part, it is provided that if the said property herein conveyed, or its representative in the possession of the party of the second part, should not be disposed of before her death, to any child or children of her said marriage in equal proportions, and if there should be no child or children of said marriage, then the party of the second part may dispose of the same by will, and if there be no will, then to the next of kin to the party of the first part. As witnesseth my hand and seal this the day and date above stated."

Orator is advised by counsel, and charges that under said deed the said Marie L. Smith had no power to sell or dispose of the land in said deed conveyed except for the purpose of reinvesting the proceeds thereof in other property, and that she had no power to sell or dispose of said land for any purpose without the consent of said J. Q. Smith, Sr., and orator is further advised that, under said deed, your orator, the only child and heir of his father, became entitled in equity to a maintenance and support out of the rents, income, and profits of said land in remainder at the death of his mother, in the event the said lands were not disposed of under the power contained in the deed. It is further alleged: That the lands had not been disposed of at the time of

the death of James Q. Smith, Sr., but remained in the possession and control of the mother of orator at the time of J. Q. Smith's death, which occurred in March, 1882. That about June 1, 1882, and after the death of J. Q. Smith, the wife of J. Q. Smith, and the mother of orator, conveyed all of the property above described except lots 4 and 5, to one Edward Ikelheimer, and that all of the parties respondent claim an interest in all of said lands except lots 4 and 5, through the said Ikelheimer, his heirs or assigns, or through mesne conveyances from him, or some of his heirs, assigns, or executors.

The bill then proceeds to set out the various persons who claim the various lots, and then alleges that any interest said parties may have to the land is subject and subordinate and inferior to the rights of your orator under the deed of his father hereinbefore set out. Certain interrogatories are then propounded to each of respondents, with prayer as above set out. The chancellor sustained demurrer as to lot 20 because not included in the deed, but decreed that all the other lands, except the land claimed by one Goins, were subject to the claim of complainant as remainderman under the deed, but denied relief as to an accounting. The appellants assign as error the overruling of demurrer to the bill as a whole, and also the overruling of demurrer to that part of the bill of complaint which seeks to have complainant's estate in the lands described in said bill declared and protected; also, for overruling demurrer to that part of the bill which seeks discovery. The cross-complainant assigned errors because the court sustained demurrers to that part of the bill which seeks an accounting for rents and profits, and also for sustaining demurrer to that part of the bill which seeks an accounting for maintenance and support and a recovery thereon.

[Dallas Compress Co., et al. v. Smith.]

PITTS & LEVA, PARTRIDGE & HOBBS, and KEITH & WIL-KINSON, for appellant.

HORACE C. WILKINSON, for appellee.

SAYRE, J.—(1) Appellants in this case appear to have acquired their claim to the property in controversy in reliance upon a construction of the marriage settlement which would give appellee's mother, the widow of the settlor, the right under the terms of the settlement to dispose absolutely of the property after the settlor's death. We consider this question to have been determined against appellants in the case of *Smith v. Turpin*, 109 Ala. 689, 19 South. 914. The argument of this contention in the present case depends, as it did in the case cited, upon a strict grammatical construction of the terms of the settlement. If we were permitted to look beyond the record in this cause to the report of the cited case, and so to discover the identity of the parties to the two settlements, we might be tempted to cast about for the reasons for two separate settlements between the same parties on the same day. Nothing appears to account for the fact, unless the circumstance that the two settlements dispose of different landed estates situate in defferent counties may be accepted as a sufficient explanation. However that may be, we have at last nothing but the difference in the language of the two settlements upon which to base a conclusion that the restrictions upon the power of the first grantee to dispose of the gift were intended to operate differently. Looking to that difference, we are strongly impressed, as was the chancellor, that whatever difference there may be in the two settlements, construed strictly according to their grammatical structure, to which appellants appeal, makes against, rath-

.er than in favor. of, appellants' contention that the necessity for the settlor's approval of any such disposition in the present case is limited merely to reinvestment after a sale or exchange of the property which, as the argument goes, might be made without that approval. As the court held in *Smith v. Turpin,* and the argument for the conclusion there reached applies with full force here, to so limit the necessity for the grantor's approval would hold for naught his purpose, evident upon the whole instrument, to preserve the remainder in the entire fee he was careful to provide for the issue of his marriage with the first taker.

It is urged in the next place that, even though Mrs. Smith had no power or right to dispose of the corpus of the estate granted, appellee's claim is barred by laches, prescription, and staleness, since more than 30 years have elapsed since her execution of the deed by which she undertook to convey an unlimited fee to Ikelheimer through whom appellants claim. We think this insistence is based in part upon a misconception of the character of the estate vested by the settlement in appellee. We are referred to *Chandler v. Jost,* 81 Ala. 411, 2 South. 82, followed under similar circumstances in *Kidd v. Borum,* 181 Ala. 144, 61 South. 100, *Berry v. Hubbard,* 30 Ala. 191, and *Nimmo v. Stewart,* 21 Ala. 682, as sustaining the proposition that the deed of settlement conveyed to Marie Louise Fair, with whom the settlor James Q. Smith, Sr., was about to contract marriage, and to appellee, the after-born child of that marriage, an estate in common for her life with remainder in fee to appellee. Of the remainder there is no question or doubt. But was appellee seised of an estate in common for the life of Mrs. Smith?

(2, 3.) *Berry v. Hubbard* is without point. The deed there was to the wife "during her natural life," and

to named children. The ruling was that the children took a present and immediate right of property and were not postponed until the death of the wife. In *Chandler v. Jost* it was held that by the husband's post-nuptial conveyance of property, to the wife to have and to hold to her for the joint use of herself and named children and such other children as should be born to her, the wife took only a partial interest in the property as tenant in common with her children. In *Nimmo v. Stewart,* where the bill, as the court noted at the outset of its argument sustaining a plea of adverse possession, asserted a present interest in the subject of controversy, and was not one to protect a future interest or remainder, there was a bequest of slaves to trustees for the benfit of testator's daughter and her children, during her natural life, with remainder to the heirs of her body. The court, reciting the general rule that, if a devise be to one and his children, and he has children at the death of the testator, parent and children take immediately and jointly under the will, held that it applied in that case. It has been very generally held since Coke's time that a will or deed to a man and his children, he having none at the time of the devise or deed, gives him an estate tail, now by our statute converted into an unqualified fee.—*Shuttle & Weaver Land & Imp. Co. v. Barker,* 178 Ala. 366, 60 South. 157. Plainly, however, the donor in the case at bar did not intend to give an unqualified fee, for he provided the remainder over, and still another limitation contingent upon the failure of children of the marriage.

(4) We have thus far considered the status of the legal title created by the deed of settlement. From the further language of the gift a trust is to be implied for the support and maintenance of children of the marriage coextensive in duration with the life estate of the

first taker, a charge upon the life estate the administration of which during the minority of appellee, to say the least, was in the nature of such things committed largely to the discretion of the first taker, and complainant—who takes an appeal from the chancellor's adverse ruling on this point—prays that a sum be set apart and taxed pro rata against defendants for his support and maintenance. Conceding that complainant might in his present circumstances fix a charge upon the land if it were still held by his mother, which seems doubtful (1 Perry on Trusts, § 118), still he has lost that right by the adverse holding of defendants. The right of support and maintenance out of rents and profits of the life estate which complainant now asserts has been neglected from the time of the purchase by defendants more than 30 years before the filing of this bill and for more than 10 years of this time complainant has been of age. The purchase by defendants, their entry, and their adverse holding during this period was notice to the world of their repudiation of complainant's right, and he is now barred.—Code, §§3091, 4846; *Nimmo v. Stewart, supra; Abercrombie v. Baldwin,* 15 Ala. 363; *Fowler v. Ala. I. & S. Co.,* 164 Ala. 414, 51 South. 393.

The life tenant being still in life, complainant seeks protection for his legal estate in remainder by a decree avoiding the life tenant's deed so far as it purports to affect the remainder, and the equity of his bill in this regard has been sustained in the court below. Appellants, defendants below, complain of this feature of the decree and ask us to consider, as a sufficient reason why this relief should have been denied on the face of the bill, that complainant's right of action accrued upon the execution of the deed, since which time they have been in adverse possession of the property. They say, in effect, that complainant took by the deed of settle-

ment of two rights, one of present enjoyment, the other of future enjoyment, both of which were alike invaded by the conveyance to Ikelheimer; that the conveyance was as much an interference with complainant's future right as with his right in præsenti; and that complainant has all along been under equal duty to assert both rights because unquestionably he might have enforced his right to support and maintenance, and, they say, the doctrine that rights in remainder need not be asserted until the particular estate is determined is applicable only where no present interest exists. Such is substantially the language employed at one point in *McCoy v. Poor,* 56 Md. 197, cited by them. They cite, also, *McQueen v. Logan,* 80 Ala. 304; *Robinson v. Pierce,* 118 Ala. 273, 24 South. 984, 45 L. R. A. 66, 72 Am. St. Rep. 160; *McCoy v. Poor, supra; Maus v. Maus,* 80 Pa. 194; and *McCullough v. Seitz,* 28 Pa. Super. Ct. 458.

In *McQueen v. Logan,* plaintiffs, in an action of eject-ment, claimed as remaindermen after the falling in of an alleged life estate by virtue of a limitation over to heirs. The court held they had no title for the quite sufficient reason that the deed had vested in them no estate in remainder; the absolute fee having vested in the first taker under the terms of the deed according to the rule in *Shelley's Case* of force in this state at the time the estates in controversy had been created. This was a complete answer to plaintiff's claim, dis-posed of every question in the case, and the court does not appear to have entertained any doubt of the cor-rectness of its conclusion. The court added, however, that on the hypothesis that the plaintiffs took jointly with their mother, the first taker as they would have it, they still could not recover, because they had been ousted when their mother conveyed and delivered pos-session to defendant, their right of action then accrued

and had long been barred by the statute—this, however, still on the theory that there was no estate in remainder.

We need not stop to state an analysis of *McCoy v. Poor,* or *Maus v. Maus,* for an examination of these cases has shown that they involved identical principles and proceeded upon the same line as our case of *Robinson v. Pierce, supra,* though their doctrine is nowhere so clearly stated as in the last-named case.

(5-8) We do not consider *Robinson v. Pierce* to be an authority against the chancellor's decree. The title of a remainderman cannot be destroyed by any act of the tenant for life, and hence a conveyance by the life tenant, purporting to convey the fee, passes only the life estate, and it is perfectly well established in this state, and everywhere so far as we are informed, that neither the statute of limitations, nor the prescriptive period of 20 years, begins to run against a remainderman until he has a right to sue; that is, until the termination of the estate for life.—*Bass v. Bass,* 88 Ala. 408, 7 South. 243; *Hall v. Condon,* 164 Ala. 393, 51 South. 20; *Blakeney v. Du Bose,* 167 Ala. 627, 52 South. 746; *Kidd v. Borum,* 181 Ala. 144, 61 South. 100. Nor is a party required in equity to sue until his interest falls into possession, unless the wrong complained of is presently efficient, according to the valid limitations of the title under which he claims, to cut off his title in remainder, as in *Robinson v. Pierce;* for length of time, where it does not operate as a positive bar by way of limitation, operates simply as evidence of assent to, or acquiescence in, an adverse status.—*Keeble v. Jones,* 187 Ala. 207, 65 South. 385; *Life Ass'n of Scotland v. Siddall,* 3 De G., F. & J. 72; 2 Perry on Trusts, § 850. But the possession of land by a tenant for life cannot be adverse to the remainderman; and, if he conveys to a third person by words purporting to pass the ab-

solute property, the possession of the purchaser is not, and cannot be during the continuance of the life estate, adverse to the remainderman.—*Pickett v. Pope,* 74 Ala. 122. A remainderman may, however, for the establishment of his · ultimate rights, maintain a bill in equity, if he choose, to remove a cloud from his title in remainder pending the particular estate, without in anywise drawing into question or affecting the interest of the life tenant.—*Lansden v. Bone,* 90 Ala. 446, 8 South. 65. But he is under no duty to assert what is apparent on the face of defendant's title, and, where there is no acquiescence in or assent to a possession that is in law and fact adverse, there is no laches.— *Winters v. Powell,* 180 Ala. 425, 61 South. 96. In *Robinson v. Pierce,* a trustee, having the entire estate in trust to preserve an equitable separate estate for life with power to sell the fee, and hence with power to bar the remainder limited over by the deed of trust, by deed executed in fraud of the trust, conveyed full legal title; his grantee thereby acceding to the entire legal estate in fee. It was held that the remaindermen had immediately an equitable cause of action which their duty to the grantee required them to assert within a reasonable time. The court said: "Here, in the case before us, after the trustee executed the trust, the remaindermen had no title and no possibility of becoming invested with one, except by suing in equity to acquire it, based upon the independent cause of relief conferred by the breach of trust. It is to this equitable proceeding to acquire a title that staleness of demand is pleaded, and to disallow the defense would be to overrule that great and invaluable principle of equity which has stood for centuries requiring the suitor to be diligent. What conceivable reason can there be for exempting a person from this rule of diligence who sues

in equity to acquire an estate in remainder or reversion, any more than one suing in equity to acquire an estate in possession? His decree, when obtained, establishes perpetually his title, entitling him to maintain his action for possession whenever the event entitling him to possession transpires; and no lapse of time after recovery of the decree, and before the possessory right accrues, could affect his right to recover possession upon the happening of the latter event"—all this because defendant had by the trustee's deed taken the entire legal estate.

(9) In the present case the grantor back to whom appellants trace their claim to the estate had no fee, nor, after the death of the settlor, any power of disposition whatever. Appellee's right in remainder is entirely different from appellants' acquired right to the life estate, as the donor plainly intended it should be; nor do we perceive how, for the purposes of this case, they are to be confused or the doctrine of merger applied, for they have never met in the same owner. Nor does appellee's right depend upon a finding of fraud actual or constructive in the deed to Ikelheimer, nor does he claim under Ikelheimer's grantor. His title, derived through the deed of settlement, was a title by purchase, was apparent upon the face of the muniments by which appellants claim, and they as well as Ikelheimer are conclusively held to notice of what that title was when they purchased. Nor has appellee ever in his own right been entitled to the possession of the property. Nor is he seeking in equity to acquire an estate in remainder as against a conveyance which may have operated to cut off that estate, as was the case in *Robinson v. Pierce.* His estate in remainder is established by the muniment under which defendants claim, and he is merely seeking to have his title cleared up as against

a claim which may embarrass him in the future. His right to maintain the bill immediately upon the execution of the deed to Ikelheimer was clear, and according to cases to which we have referred, and the concession in *Robinson v. Pierce,* has not been lost by reason of delay.

*McCullough v. Seitz*: In that case plaintiff sued to recover damages for injuries done his farm by the diversion and discharge upon it of water through a drain upon defendant's land. Plaintiff deraigned title under a deed of trust which vested the legal estate in fee in the trustee. The deed provided expressly for an application of the rents, issues, and profits at fixed times to the maintenance and support of the wife of donor's son and her children—plaintiff was a child—during the life of the husband and at his death to the maintenance and support of the widow and children, with remainder over in fee simple to surviving children. Defendant claimed an easement by prescription running from the time of the trustee. The court, holding that the statute commenced to run against the equitable title of the plaintiff in the life of the husband and continued to run as against plaintiff's estate in remainder which had vested in him by the grant upon which the whole estate depended, noted that the deed vested the equitable life estate in the wife and child living at the date of the grant, as in *Chandler v. Jost,* opening to let in afterborn children, and that: "The grant of the equitable estate was not to the wife for the support of herself and children, nor was it to her for life, with remainder to her children, and the estate which the children acquired under the terms of this grant was essentially different from those considered in *Wolford v. Morganthal,* 91 Pa. 30; *White v. Williamson,* 2 Grant, Cas. 249, and *Hague v. Hague,* 161 Pa. 643 [29 Atl. 261, 41 Am. St. Rep. 900]."

These last cases, from which the court thus sought to differentiate *McCullough v. Seitz,* have been considered, and, as we read them, sustain our opinion that appellee here has not lost his estate by lapse of time.

We think the opinion and decree of the learned judge below should be affirmed on both original and cross appeals.

Affirmed.

ANDERSON, C. J. and McCLELLAN and SOMERVILLE, concur.