188 So. 885

**USSERY et al. v. DARROW et al.**

**8 Div. 964.**

Supreme Court of Alabama.

April 20, 1939.

Rehearing Denied May 25, 1939.

and Paine & Paine, of Aberdeen, Miss.. for appellants.

L. E. Farley, Irvin A. Clement, and Wm. W. Mitchell, Jr., all of Memphis, Tenn.,

Cabaniss & Johnston and Wm. H. Trueman, all of Birmingham, and Bradshaw & Barnett, W. H. Mitchell, and Merwin T. Koonce, all of Florence, for appellees.

FOSTER, Justice.

Appellants filed a bill in equity for the sale of land for division, and in it set out the claim of those now in possession, and sought an adjudication of their rights.

All parties are asserted to derive title from Jacob K. Swoope, who died in 1871, leaving a will which was duly probated in Lauderdale County, Alabama, where he resided, and where the property here involved is situated. The will provided in so far as his real property was concerned as follows:

"I give to my wife, Elizabeth T. Swoope, one third of all the balance of my property, both real and personal, wherever situated for the term of her natural life.

"I give to my daughter, Tempe P. Swoope, all the balance of my property, both real and personal, upon the following conditions and limitations, viz., that should the said Tempe die without issue of her body, the said property is hereby given to my brothers and sisters, or their descendants, the descendants of each brother or sister to take that share which the brother or sister would have taken had he or she been living. Upon the death of my wife I give and devise to my daughter, Tempe, the portion of property herein given and devised to my wife, for the natural life of my wife, and upon the same limitations."

The widow died in 1890. The daughter, Tempe, married George M. Darrow, about 1885, and died October 16, 1927, without ever having had any issue of her body. Testator was survived by one brother, C. C. Swoope, one sister, Fannie Swoope Moore, and by two half-brothers, J. S. Billups and Matthew Clay. He had another half-brother, Thomas F. Clay, who died before testator. But all of them died before the death of Tempe, in 1927. Their descendants living at that time claim under the terms of the will copied above. Thomas F. Clay, who died prior to the death of

testator, left three children, all of whom died before Tempe leaving children.

The bill was filed October 7, 1937, which was nine days before the expiration of ten years after the death of Tempe, and sixty-six years after the death of the said testator. It sets out in full a proceeding begun May 25, 1887, in the chancery court of Lauderdale County by Tempe Darrow and her husband George Darrow referring to the will of testator, and making parties the said C. C. Swoope, J. S. Billups and Matthew Clay, and the children of Thomas Clay and Fannie Moore, one of whom, Jacob K. S. Moore, was a minor. It is now alleged that these were not all the descendants of deceased brothers and sisters of testator.

The bill as amended sought the sale of a portion of the lands of testator to obtain funds to be reinvested in making valuable permanent improvements on the remainder. It set up facts showing that it would be to the interest of all persons to do so.

All the adult parties appeared and admitted the allegations of the bill and a guardian ad litem was appointed for the minor, and he answered demanding strict proof, etc. On final hearing the court entered a decree that it would be to the best interest of the minor and all the parties to sell a certain described portion to improve the balance.

This sale was duly made and confirmed, and resulted in acquiring a certain amount of money which the court finally found had become owing by George Darrow on account of the purchase, and that he had expended more than that amount in improving the balance of the property of testator, which was held to be a full compliance with the former decree providing for such improvement, and did provide permanent valuable improvements of interest to all the parties.

It is the property thus sold which has by various processes come into the possession and claim of ownership by the parties to this suit, adverse to the claims of those descendants of the brothers and sisters of testator living at the time of the death of Tempe, who claim it under the terms of the will to which we have referred.

Reference is made by us to the case of Darrow v. City of Florence, 206 Ala. 675, 91 So. 606. This case is not the subject of claim so far as the complaint here is concerned. But in that case, decided here in 1921, it appears that the city undertook to foreclose an improvement lien on lots 111 and 112, which are apparently the same lots which were improved by virtue of the litigation begun in 1887, supra. In that suit Mrs. Tempe Darrow filed a cross-bill making respondents "the other heirs" as stated in the report of the case. This we assume means the living brothers and sisters of testator, if any, or their descendants.

The chief point of the litigation relates to the proper interpretation of that feature of the will which we have copied above. By a divided court it was held that the words of survivorship related to the date of testator's death, and that since at that time the said daughter Tempe had not died without issue, nor at all, therefore, she took a fee simple in the property. The opinion recognized the rule that the words of survivorship do not necessarily relate to the date of the death of testator, but they will do so unless an intent to the contrary is manifest. The majority held that a contrary intent was not manifest from the will itself, and no collateral facts were alleged to shed light on such intent. That suit was determined about sixteen years before the present suit was begun, and about six years before Tempe died. It did not relate to the property here involved, but to the same feature of the will by which it is controlled.

The present bill undertakes to set up such collateral facts as it is contended are sufficient to show that testator intended that the words of survivorship should relate to the date of the death of Tempe. They are in substance that when the will was executed he was a guest in a hotel in Memphis, Tennessee, away from his home: that he was ill of a deadly disease of which he died the following day: that he was then thirty-seven or thirty-eight years of age, and his daughter Tempe was about nine years old; and that he executed the will under apprehension of imminent and impending death.

Our attention is also directed to some litigation in Mississippi, involving property of testator there situated, as reported in Darrow v. Moore, 163 Miss. 705, 142 So. 447. The report of that case, decided in 1932, shows that the court refused to be bound by the interpretation given by this Court in Darrow v. Florence, supra, and by reason of such collateral facts, supra, held

in effect that the intention of testator was clear that the words of survivorship related to the death of Tempe, and not to his own death. We are asked in this suit to make a like ruling notwithstanding our opinion to the contrary expressed in Darrow v. Florence, supra, made without the aid of said collateral facts.

The present claimants of the property succeeded in getting a ruling on demurrer to the bill now before us, holding in substance that the present contention of those who are claiming as descendants of the brothers and sisters of testator living at the death of Tempe are barred by laches, and that our interpretation of the will in Darrow v. Florence, supra, though in respect to different property, is now stare decisis, and has become a rule of property.

In answer to the contention of laches, appellants insist that this suit was begun within ten years after their rights came into being, that until Tempe died, assuming that their interpretation of the will is sound, they had no legal standing as executory devisees, for until then it could not be said for a certainty that she would die without issue of her body. They contend, therefore, that the only limitation which controls them is the ten year statute of limitations applicable in equity as at law under sections 8955, 6522, Code.

■ The question is available by demurrer when the bill shows that the claim is barred by limitations, laches or staleness of demand. Drummond v. Drummond, 232 Ala. 401, 168 So. 428. If the claim is that of laches short of the period of statutory limitations, it may be available, but the special circumstances operating to destroy the right, though not barred by statute, should appear in the bill, and if not they should be brought forward by way of defense. Phoenix Chair Co. v. Daniel, 228 Ala. 579, 155 So. 363; Mullen v. First National Bank, 226 Ala. 305, 146 So. 802; Gayle v. Pennington, 185 Ala. 53(9), 64 So. 572.

Here all the circumstances which affect the question are alleged in the bill in connection with the report of the case of Darrow v. Florence, supra, as it appears in the records of this Court.

■ The principle of laches is as follows: "Where, from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice, the complainant will by his laches be precluded from relief; and it is not even necessary that the court should be satisfied that the original claim was unjust, or has been satisfied. And this is true even though the demand is not barred by the statute of limitations, nor under the ban of the doctrine of prescription." Bromberg v. First National Bank, 235 Ala. 226, 178 So. 48, 53, and cases cited, 8 Alabama Digest, Equity, p. 448, ☞ 72; Courson v. Tollison, 226 Ala. 530, 147 So. 635; Dunn v. Ponceler, 235 Ala. 269, 178 So. 40.

■ Had complainants waited nine days longer, the bar of the statute would have been complete. They may be barred by laches though not by the statute. When Mrs. Tempe Darrow died in 1927, there had elapsed fifty-six years since the death of testator. This is about the space of two generations. The property here in question had been held by claimants under a chancery decree since 1891, which is about thirty-six years before she died. Assuming that proof of the age of testator when he made the will as well as the age of Tempe would be available together with the other collateral facts alleged in the bill to influence the question, on account of such length of time and the acquisition of adverse interests, equity would require speedy action after her death, if we further assume that the claimants of the remainder at that time had no duty in that respect prior to her death, and were not affected by the failure of their antecedents to take some action prior to that time. By reason of the difficulty if not impossibility to do justice and ascertain the truth at that time, it was clearly their duty to be prompt in the assertion of any supposed right to have a different construction of the will which would be advantageous to them. Their delay for ten years less nine days was not the exercise of such diligence as equity requires under the circumstances to acquit them of the charge of laches.

We might here rest this opinion without a discussion of other important questions on which the same result might be reached. Their discussion adds emphasis to what we hold in respect to the claim of laches, and we therefore think that it is advisable to extend the discussion to include those questions.

We are asked to hold that these complainants should have applied to the period of their dereliction that which elapsed from the time when they entered into the status of executory devisees contingent upon the death of Tempe without issue and upon their being in life at that time. The foundation for this contention is in the fact the bill alleges that they were executory devisees at that time, but does not allege definitely how long before then they had been in that status had she died at an earlier date; and, therefore, that since equity practice makes the presumptions adverse to complainants on demurrer, it will be presumed that it covered at least some appreciable period of time.

Indulging in that presumption, we proceed to a discussion of what we find to be established equitable rules respecting the duty of a contingent remainderman to institute suit to establish his claim while the precedent estate is still subsisting. We are not content to say that before her death these complainants were not so affected by lapse of time without action as that laches would not extend to them.

We may assume for the purpose of this argument that the facts now set up would produce a different interpretation of the will than as declared in Darrow v. Florence, supra, and that under them it means to devise to Mrs. Tempe Darrow a base fee determinable if she shall die without issue, creating in the brothers and sisters of testator or their descendants an executory devise contingent upon being alive if and when she should die without issue. Abrahams v. Abrahams, 219 Ala. 533, 122 So. 625. But it does not follow that before her death they had no right or duty to clear the title of a condition created by those two cases on the court records of this State.

While their interest at any given time prior to her death was contingent, it was said in Culley v. Elford, 187 Ala. 165, 65 So. 381, 384, that they had "more than a mere hope or expectancy; it has an existing legal foundation in the will, and is an interest for the protection of which the powers of the chancery court may be invoked." And in Braley v. Spragins, 221 Ala. 150, 128 So. 149, 154, it was pointed out "that a contingent remainderman or reversioner may invoke a construction of a will, or maintain a bill for the protection of the property in which, by the will, such party is given an interest, though it be prospective."

We have a line of cases following Woodstock Iron Co. v. Fullenwider, 87 Ala. 584, 6 So. 197, 13 Am.St.Rep. 73, declaring a principle stated in Herren v. Beck, 231 Ala. 328, 164 So. 904, 906, as follows: "When a remainderman's title passes out of him, but subject to his equitable right to have it reinvested or to be subjected to a lien or trust, such right and duty to sue occurs as soon as the instrument is executed," and during the existence of the precedent estate.

The principle is distinguishable from one which applies when the life tenant undertakes to convey the remainder, but it does not have that effect because the chain of title shows that he only has and can only convey a life estate. A remedy under such circumstances by the remainderman to clear the situation is available but not obligatory, because the public need not be misled. Dallas Compress Co. v. Smith, 190 Ala. 423, 67 So. 289; Teal v. Mixon, 233 Ala. 23, 169 So. 477. But we are not willing to apply that principle to a situation where the records and chain of title are all such as that they not only purport to pass the entire fee and all interests, but taken alone in fact do so, and when the only matter which will create a different result is collateral, not shown or suggested by the chain of title, nor public records judicially known, or to which the record refers. There is then an inchoate right which must be asserted to prevent the title from passing in fact as it purports to pass on its face. It resembles a cloud on a title. King v. Artman, 225 Ala. 569, 144 So. 442.

It not only purports to pass his title but it will have that effect unless he counteracts it by producing matter not shown on the face of the title. Under those circumstances, it was within the power of those contingent holders to clear up what was sufficient, taken alone, to deprive them of any claim, but to the extent that in doing so it was necessary to rely on collateral facts obscured by the passage of many years, and to prevent further injustice from occurring in reliance on such record title, they were bound to act promptly to acquit themselves of laches.

There is also pertinent the question of whether these appellants were bound by the litigation in 1887 under the doctrine of virtual representation, which we have

discussed in the companion case of Swoope v. Darrow, 237 Ala. 692, 188 So. 879, considered in connection with this one.

In our case of Culley v. Elford, supra, the situation in its legal aspect was quite similar to that presented in Darrow v. Swoope, back in 1887, under which appellees claim. The question was whether executory devisees were bound on the principle of virtual representation by a proceeding in which those then living and contingently interested were parties, but who were not such devisees when the estate vested. The proceeding was to sell the property for reinvestment: one of them being a minor. The court refused to apply the principle. A distinction was drawn between a partition suit and one which involves a sale of the property except to satisfy a charge upon the entire estate. This distinction is not reflected in other authorities. 21 Corpus Juris 297, note 27-b.

In our case of Letcher v. Allen, 180 Ala. 254, 60 So. 828, the proceeding was a partition in kind, as to which the application of this principle seems to be fully recognized.

And in our case of Bibb v. Bibb, 204 Ala. 541, 86 So. 376, the will created a trust, with a residuary right in a class of executory devisees, whose membership was mobile and continued to shift. The Court held that a court of equity might cause a sale of trust property to be made for reinvestment in the interest of all, and applied this principle of virtual representation.

In Elmore v. Galligher, 205 Ala. 230, 87 So. 349, 351, the Court held that the principle of virtual representation had application to a case in which there was a sale of property for reinvestment in the interest of minors, when the property had been devised to one for life with contingent remainder to a class dependent upon contingencies similar to those we are now considering. The Court did not refer to Culley v. Elford, supra, though it seems to be cited in the brief as reported. And in the course of the opinion by Justice Somerville, it was observed: "But where, as here, the suit does not present any antagonism of estates and interests, and the effect of the decree is merely to change the form or identity of the property which is the subject of the several successive estates—which change may well be to the common advantage of all, as was in fact ascertained to be so by the decree here in question—preserving and protecting the contingent interests in the proceeds of the original property, and in the property in which such proceeds are invested, we see no reason why the unborn remaindermen could not be fully and fairly represented, as to such a policy, by either their mother, as holder of a life estate, or by their uncles and aunts, as contingent executory devisees. It was so ruled in Ridley v. Halliday, 106 Tenn. 607, 61 S.W. 1025, 53 L.R.A. 477, 82 Am.St.Rep. 902, and in Gavin v. Curtin, 171 Ill. 640, 49 N. E. 523, 40 L.R.A. 776, where after-born remaindermen were held to be fully bound."

There seems to be two theories on which virtual representation is binding. One of them is that which Judge Somerville there expressed, and is stated in 21 Corpus Juris 295 to 297, with copious notes, and the other stated in 34 Corpus Juris 1000, et seq., in which there is an adversary proceeding in which the rights of the executory devisees or contingent remaindermen conflict with those of the complainants or other parties, where each conflicting interest is sought to be given superiority over the other.

We have in this litigation represented by the two suits illustrations of both aspects of the principle. The first aspect is illustrated in this case, and the second in the case of Swoope v. Darrow, supra, considered with this one.

We might rest this case upon the principle of laches, without reference to any seeming conflict between the opinions in Elmore v. Galligher and Culley v. Elford, supra. But they both are dealing with the principle as illustrated in this, the Ussery case, and seem to reach a different conclusion as to its applicability. The opinion in Elmore v. Galligher, supra, is a later expression of the Court and is well supported, as we have stated, and cited in Tolley v. Hamilton, 206 Ala. 634, 91 So. 610. Whereas the opinion in Culley v. Elford, supra, apparently loses sight of the two aspects of its application, as though it were only effective as illustrated in the companion case of Swoope v. Darrow, supra, herewith considered. We see no reason to depart from the theory of its application in Elmore v. Galligher, supra.

It is also insisted on behalf of appellants that the persons made parties to the litigation in 1887 were not there declared to be sued in any such representative capac-

**74**

ity, but were sued merely in respect to their individual personal rights or claims, and therefore the class to which they belong was not in the suit declared to be thus represented.

The bill in that litigation was filed by Tempe Darrow and her husband. It sets out the terms of the will and alleges that at the time of the death of testator he had three brothers and one sister living, and one brother, Thomas Clay, dead. It alleges that three brothers, James S. Billups and Charles C. Swoope and Matthew Clay, were living and were made parties. It undertakes to name the children of those alleged to be dead, to-wit, Fannie Moore and Matthew Clay. Those named are made parties. One is alleged to be a minor and is represented by guardian ad litem. Each person made a party is shown either to be a brother living, or the descendant of a deceased brother or sister, and is so described in the bill. The description of all of them who are made parties is that they are the brothers of testator or descendants of deceased brothers and sisters.

True, the bill does not expressly allege that they are made parties as representatives of the executory devisees; but that they are made parties because they are alleged to be executory devisees, if they have any interest, is made perfectly clear. When persons made parties are described as members of a class due to be represented, we are not willing to say that they are not made parties as members of the class simply because such words are not used, when the bill alleges or shows that they are sued because they are members of the class.

We think that under those circumstances the question of whether the class is duly represented depends upon principles fully discussed in the cases, not on the question of whether they were sued as representatives, but being sued and described as members of the class whether thereby the class had adequate representation.

The rule declared in McArthur v. Scott, 113 U.S. 340, 5 S.Ct. 652, 28 L.Ed. 1015, lays emphasis on the fact that the court must have sufficient information to determine whether enough parties are before it to represent properly the rights of all. True, it is said that the bill must show, for that purpose, that those parties are brought in as representatives. But we cannot think that the court meant that there should be a distinction for such purpose of so describing persons and of declaring that they are sued as such representatives.

■ The bill here considered, as we have shown, alleges that they are members of the class. It undertakes to make all members parties. If any were then living which were omitted, as now here alleged, the inference is clear that it was not so intended. If the interest of the whole membership of the class was duly considered by the court because of the presence of some occupying the same status and whose interest was not opposed and fully capable of representing all, the principle seems to be applicable to those subsequently coming into the class.

■ And in order to bind unborn members of the class, the bill must show that those made parties have such interest as to induce them to bring forward the entire merits of the question. Wolf v. Uhlemann, 325 Ill. 165, 156 N.E. 334; Tolley v. Hamilton, 206 Ala. 634, 91 So. 610; Miller v. Texas & Pacific R. R. Co., 132 U.S. 662, 10 S.Ct. 206, 33 L.Ed. 487.

With reference to the suit now under consideration, the merits did not relate to a construction of the will, since that was not made in the decree. The only interest which the parties had was whether it would be advantageous to sell some of the property to raise money to improve the balance so as to make it income bearing, and to do this properly and efficiently. It was in the nature of a reinvestment. Their respective interests were not antagonistic and nothing was done to prejudice the rights of any persons so interested, if the proceeding was duly and efficiently conducted. There were certainly enough present to see that this was done.

So that we rest our conclusion on the principle of laches and on the binding effect of the decree in Darrow v. Swoope, supra, back in the 1887 suit, on the principle of virtual representation, and pretermit stare decisis and other questions.

Appellees have urged further objections to the bill which relate to matters easily amendable, if necessary, and do not relate to the merits of the controversy. Since the principles which we have discussed are sufficient to sustain the decree and affect the substantial rights of the parties, we will not consider the other matters.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.