79 So.2d 17

**Louis KILLIAN**

v.

**Esme EVERETT et al.**

**7 Div. 262.**

Supreme Court of Alabama.

March 10, 1955.

Rehearing Denied April 7, 1955.

Max J. Howard and W. M. Beck, Fort Payne, for appellant.

Leonard Crawford, Fort Payne, for appellee.

MERRILL, Justice.

The appellant filed a bill to quiet title to forty acres of land in DeKalb County in August 1951. The appellees filed an answer denying complainant's alleged interest in the land and filed a demand for a jury to determine the question of title. The case was submitted to a jury. Complainant based his title and claim on adverse possession. The verdict of the jury was for the appellees. Before final decree was entered the complainant made a motion for a new trial and to set aside the verdict. The court overruled the motion and thereafter entered a decree in favor of the respondents. The appeal here is from the decree.

W. A. Everett was the owner of the lands involved in 1926 and on January 9, 1926, he executed a mortgage to M. H. Killian for the sum of $181.06, due October 1st, 1926. Another mortgage on the same property dated July 8, 1910, was transferred to M. H. Killian on June 10, 1936. W. A. Everett died in April 1926. M. H. Killian, the mortgagee, began paying taxes on the land in 1927. Mrs. Tinnie Van Dyke, a daughter of W. A. Everett, continued to live in the dwelling on the lands for about ten years and when she left in 1934 or 1935, M. H. Killian went into possession of the lands and thereafter rented to various tenants. The following stipulation was entered into at the beginning of the trial:

"It is stipulated that before the execution of any of the mortgages offered in evidence in this case W. A. Everett was the owner of the lands involved in this suit.

"That beginning with the year 1927 M. H. Killian listed the lands in controversy in the name of W. A. Everett and paid the taxes on same, and that beginning with the year 1935 he listed said lands in the name of Killian Sons & Company down to and including the year 1938. In 1939 and from that date to the present the lands have been listed in the name of M. H. Killian. For the years 1950, 1951, and 1952 the word 'Estate' has been in the assessment following the word Killian; that M. H. Killian died January 1, 1949 and in settlement of his estate Lewis Killian became the owner of M. H. Killian's interest in the lands in controversy."

Mr. C. J. Scott, an attorney, testified that M. H. Killian, before he died January 1, 1949, told him that he was going to turn the place back to the Everetts when he had collected the amount due on his mortgage and that he had been applying the rents and profits of the place on the debt. Mr. Scott testified that the first conversation to this effect took place in 1936 and another after the beginning of our entry in World War II in 1941.

█ Assignment of error No. 1 contends that the court erred in sustaining respondents' objection to a question. The court stated that the objection was sustained because the same question had been asked a few moments before and the court had permitted it to be answered. The record sustains the statement of the court and consequently the assignment of error is without merit because the exclusion of a question seeking a mere repetition of facts already stated by the witness is not error. 19 Ala.Dig., Witnesses, ☞245; 2 Ala. Dig., Appeal and Error, ☞1058(2).

██ Assignment of error No. 2 is that the court erred in overruling complainant's objection to a question propounded to complainant's witness J. L. Pope on cross examination referring to Mrs. Tinnie Van Dyke: "Was she a person of unsound mind?" The ruling of the court, if erroneous, was error without injury because the answer of the witness was, "I aint no doctor." The same rule would apply to the questions concerning the sanity of Mrs. Van Dyke raised in assignments of error

3, 4 and 5, because the witness never did state his opinion of her sanity or insanity. 2 Ala.Dig., Appeal and Error, ☞1048(5).

■ Assignment of error No. 6 is that the court erred in overruling complainant's objection to the following question which was addressed to respondent Esme Everett: "Did you have her (Mrs. Van Dyke) committed (to Bryce Hospital) from this court house?" On the same page of the transcript on which the objection to this question was registered, we find the following: "The Court. Gentlemen, I will have to rule out anything he said about her being of unsound mind because he didn't qualify." This statement by the trial court explicitly ruled out any testimony concerning Mrs. Van Dyke's unsoundness of mind, "and its original admission, if erroneous, was rendered harmless." Farabee v. Wade, 200 Ala. 583, 76 So. 941, 942; Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543.

■ Assignments of error 7, 8, 9 and 10 contend that there was error in the court's refusal to give the general affirmative charge which was stated in various ways. The rule under which complainant contends that he was entitled to the affirmative charge is that he and his predecessor had been in adverse possession of the lands for over twenty years. The law is stated in Ward v. Chambless, 238 Ala. 165, 189 So. 890, 894, as follows:

"It is well recognized in this jurisdiction that the possession of a mortgagee, after default in the payment of the mortgage debt, without any recognition of his relation to the mortgagor, is adverse, and if such possession is continued for ten years, without recognition of any right of the mortgagor, will bar a recovery by the mortgagor. This rule holds good also in case of sub-vendees of the mortgagor. Toomer v. Van Antwerp Realty Corp., 238 Ala. 87, 189 So. 549 [123 A.L.R. 1063]."

■ But here the evidence of Mr. Scott showed that there was "recognition of any right of the mortgagor" in that during the time relied on there was a recognition by M. H. Killian of the rights of the heirs of W. A. Everett and one of the essentials is that "possession, to be adverse, must be held under a claim of right, and there can be no adverse possession without an intention to claim title."—Tanner v. Dobbins, 255 Ala. 671, 53 So.2d 549; Denton v. Corr, 253 Ala. 497, 45 So.2d 238; Guy v. Lancaster, 250 Ala. 287, 34 So.2d 499.

Part of the court's charge is as follows:

"If, on the other hand, Gentlemen of the Jury, Mr. Killian did not intend to claim, but only intended to collect what was due on his mortgages, and to apply what he was getting out of rents on the mortgages, and was just holding possession to the land and paying taxes merely for the purpose of collecting the mortgages, not claiming title, but that the collections were to apply on the mortgages, then the respondents would be entitled to recover in this case.

"That is the law simply as I see it in the case.

"If Mr. Killian, the ancestor, M. H. Killian, held the property adversely, open, hostile, notoriously for a period of ten years and listed the property for taxes and claimed to own it as his own, then the plaintiff would be entitled to recover.

"On the other hand, if he did not claim it as his own, as the respondents contend, merely held it for the purpose of collecting and applying the collection to the mortgages he held, if that is true then the respondents would be entitled to recover."

■ In Murphy v. Leatherwood, 221 Ala. 61, 127 So. 843, we held that mere possession for the statutory period is not sufficient to perfect a bar because the possession must be adverse to the true owner and under the circumstances enumerated here, the question of adverse possession was properly left to the jury. Aiken v. McMillan, 213 Ala. 494, 106 So. 150.

The discussion supra adequately answers the questions raised by the remaining assignments of error.

The verdict of the jury will not be disturbed unless plainly and palpably wrong. The decree of the lower court is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.