104 So.2d 86 (1958)
Rosella WAGNER, Ida Mae Smith, A.O. Lunsford, J.M. Lunsford, Adelle Adams and W.L. Lunsford, individually and as Administrator of the Estate of J.J. Lunsford deceased, Appellants,
v.
J.J. MOSELEY, Edgar Moseley, Doris M. Goodman, Lois Goodman Riggins, Frank Moseley, and Elizabeth Moseley Gibson, Appellees.
No. 237.
District Court of Appeal of Florida. Second District.
June 27, 1958.
*88 Nowlin & Adams, Delray Beach, for appellants.
McCoy & Love, Lake Worth, for appellees.
KANNER, Chief Justice.
This appeal stems from a final decree entered in a suit instituted by appellees for relief with reference to title to certain lands in Palm Beach County. Appellees asserted title under the provisions of the homestead law, while appellants claimed under color of title by adverse possession and under laches in that appellees delayed too long in bringing the suit. The chancellor determined that title to the property is vested in the appellees.
The following is a condensation of the stipulated factual situation pertinent to the appeal. The lands concerned were purchased by E.D. Moseley from Swain Development Corporation in January, 1929, with part of the purchase price being paid at the time. Moseley went into possession, erected a home and other structures on the property, moved there with his wife and children, and maintained the property as his homestead. In November, 1935, he died, leaving as his heirs at law his widow *89 and his children who continued to live on the homestead property.
In December of 1936, the widow, Iola Moseley, married J.J. Lunsford, of which union no children were born. The two continued to reside thereafter on the property until her death in August, 1950, and then Lunsford until his death in November, 1952, during which time they were in open, notorious, and exclusive possession of the property. The only exception to this possession was the south fifty feet of the property which Lundsford had conveyed to one of the Moseley children in November, 1951, for fifty dollars' consideration, of which the other appellees were aware.
In January, 1940, there was unpaid upon the original purchase contract the sum of $122.04. Swain Development Corporation, holder of the outstanding encumbrance under the purchase contract, conveyed the property at that time to Iola Moseley Lunsford and J.J. Lunsford, and they in turn made a note and mortgage to L.C. Swain for the unpaid amount. The note was subsequently paid by Iola Moseley Lunsford and her husband, J.J. Lunsford, and the mortgage was satisfied. The Moseley children knew that Iola Moseley Lunsford and her husband had acquired title by this deed to the property at approximately the time such deed was placed of record.
After Iola Moseley Lunsford and J.J. Lunsford purchased the property, they spent considerable money in repairing the same and making additions to the building. During the hurricane which occurred in 1947, the building was badly damaged and was rebuilt.
The appellants are the sole heirs at law of J.J. Lunsford, and W.L. Lunsford is the administrator of his estate. Appellees are the children and sole heirs at law of E.D. Moseley.
The court below, in granting relief to appellees, held that the property owned by E.D. Moseley at the time of his death was homestead property and passed to his widow as a life estate and upon her death to their children as remaindermen. The court held further that appellees pay into the estate of J.J. Lunsford one-half of the sum of $122.04 plus accrued interest, the unpaid balance on the original purchase contract for which Iola Moseley Lunsford and J.J. Lunsford had executed a note and mortgage and which was later paid by both of them. The deed to Iola Moseley Lunsford and J.J. Lunsford from Swain Development Corporation was declared void and set aside, as was the deed to the south fifty feet of the property executed by Lunsford to one of the appellees. The court held further that certain costs in the probate proceeding in the estate of J.J. Lunsford be borne by appellees.
Three questions are posed for determination on this appeal. The first and primary question concerns appellants' claim to title to the property predicated on an asserted adverse holding under color of title for more than the statutory limitation period of seven years by Iola Moseley Lunsford and J.J. Lunsford, her husband, dating from the deed executed to them on January 16, 1940, by Swain Development Corporation. The second question is whether appellees were guilty of laches by waiting too long to bring the suit, and the third question, cross assigned as error by appellees, concerns costs in the probate proceeding in the estate of J.J. Lunsford which the chancellor assessed against appellees.
When analyzed and summed up, the claim of adverse possession under color of title is predicated only upon the facts that in 1940 a deed to the property was acquired with the knowledge of the remaindermen, that sometime later certain improvements were made by both Iola Moseley Lunsford and J.J. Lunsford, and that the two of them were in possession of the property after the acquisition of the deed to the time of their death, representing a period of about thirteen years, except as to *90 the conveyance by J.J. Lunsford of the south fifty feet in 1951 to one of the appellees.
When E.D. Moseley died in 1935, his widow who survived, Iola Moseley, became vested with a life estate in his homestead, and his children, as his lineal descendants, with the remainder. Section 731.27, Florida Statutes, F.S.A.
A life tenant is not without duties owing to a remainderman. Thus the relationship of a life tenant to a remainderman is frequently designated that of a trustee or quasi-trustee in the sense that the life tenant cannot injure or dispose of the property to the detriment of the rights of the remainderman. 31 C.J.S. Estates § 34, pp. 42-43; and 33 Am.Jur., Life Estates, Remainders, section 217, pp. 700-701. And the general rule is that a life tenant cannot acquire an outstanding title, interest, claim, or encumbrance for his own exclusive use against a remainderman, nor can this be done by one claiming under him or through an intermediary, but it will be deemed as having been acquired for the benefit of the life tenant and the remainderman. The disability which fastens onto a life tenant to assert title against his remainderman ordinarily applies also to the spouse of the life tenant. 31 C.J.S. Estates § 35, pp. 44-45. See also Rushton v. McLaughlin, 1925, 213 Ala. 380, 104 So. 824, and Lowry v. Lyle, 1924, 226 Mich. 676, 198 N.W. 245. Such transactions under proper circumstances entitle the life tenant to contribution from a remainderman for his proportionate share of the amount paid by such life tenant. 31 C.J.S. Estates § 35, pp. 44-45, and Snow v. Arnold, 1938, 132 Fla. 435, 181 So. 7.
The law seems to be firmly entrenched that generally the statute of limitations, laches, or estoppel will not run against a remainderman prior to the termination of the life tenancy where the life tenant's conduct is consistent with his duty toward the remainderman. Since during the running of the life estate the remainderman had no right of entry, it follows that neither laches, estoppel, nor limitations could operate against him by his non-assertion of his rights as a remainderman. There are exceptions or qualifications to this rule. In the case of Commercial Bldg. Co. v. Parslow, 1927, 93 Fla. 143, 112 So. 378, at page 381, the general rule and the exceptions to it are stated with crystal clarity, quoting from:
"The general rule is that laches, estoppel, nor the statute of limitations will run against a remainderman prior to the termination of the life tenancy. This rule is, however, predicated on an uninterrupted continuation of the conduct of the life tenant consistent with his duty as such to the remainderman. The rule may not apply where it is shown that the remainderman had actual knowledge of the repudiation or abandonment by the life tenant of his status as such, and of the holding by him of the property under a different and adverse right, or where the life tenant, in good faith and to the knowledge of the remainderman, claims title, not as a life tenant, but through some other source, or where there has been ouster and disseisin of the life tenant or by one claiming by, through or under him, and this under claim of right or color of title followed by adverse possession for the statutory period, or when there is some special independent equity in favor of the purchaser who claims under a conveyance from the life tenant. * * *"
See also Anderson v. Northrop, 1892, 30 Fla. 612, 12 So. 318; Scott v. Fairlie, 1921, 81 Fla. 438, 89 So. 128; Fairlie v. Scott, 1924, 88 Fla. 229, 102 So. 247, and Mullan v. Bank of Pasco County, 1931, 101 Fla. 1097, 133 So. 323.
Further with reference to adverse possession, it is stated in the case of Mullan v. *91 Bank of Pasco County, 1931, 101 Fla. 1097, 133 So. 323, on page 328:
"Where the possession is originally taken and held under the true owner, a clear, positive, and continued disclaimer and disavowal of title, and an assertion of an adverse right brought home to the true owner, are indispensable before any foundation can be laid for the operation of the statute of limitations."
and on page 329 of 133 So., it is said:
"* * * But it takes something more than the execution and delivery and recording of a warranty deed to establish a title by adverse possession. There should be an entry thereunder to the exclusion of the rights of all others. `Every presumption is in favor of a possession in subordination to the title of the true owner, and an adverse possession as against such owner must be established by clear and positive proof.'"
Thus we see that constructive knowledge or mere knowledge by the remainderman of acts by the life tenant not necessarily inconsistent with the life estate is not enough ordinarily to bar the operation of the general rule and to start the operation of the statute of limitations.
Especially must it be recognized that the mother as life tenant, with respect to her remainderman child, occupies a fiduciary and close familial relationship. So as to the possession by a parent of his child's land as it concerns adverse possession, quoting from the case of Mullan v. Bank of Pasco County, supra, 133 So. at page 328, we see:
"The possession of a parent of his child's land will not be deemed adverse to the child. Such possession subject to certain general exceptions will be presumed to be permissive and not adverse."
and on page 329 of 133 So.:
"For the possession of the widow to be adverse to the children, there must have been some open assertion of a hostile claim of title other than mere possession, and notice of such claim must have been brought home to them."
It is but part and parcel of filial solicitude and concern founded upon closeness of fundamental family ties that a child living away from the parental fold will look favorably upon and sanction the home as a continued place of residence for his mother. In so doing, the child is certainly not expected thereby to relinquish and forfeit any right he may have to the homestead. Such a premise could not be upheld by a court of justice except it be clearly shown that the knowledge of a claim on the part of the mother hostile to the child's rights had been brought home to the child for a length of time adequate to serve as a bar against him under the statute of limitations.
Life tenant, Iola Moseley, had been in possession of the property from the time of its acquisition in 1929 to the time of her death in August, 1950, first with her husband, E.D. Moseley and their children, then as life tenant, and finally with her second husband. Then she and her later husband procured a deed to the property by payment of $122.04 remaining as balance on the original purchase contract executed many years before. The stipulated facts reveal that the occupancy of the property by Iola Moseley continued after her marriage to J.J. Lunsford in 1936 as it had previously both as the wife and the widow of E.D. Moseley. It must be recognized that possession of the property by Iola Moseley Lunsford was that of a life tenant through her former husband and not as a result of the procurement of and entry under the deed of 1940 by her and J.J. Lunsford, and that Lunsford came onto and lived on the property through his marriage to Iola Moseley in 1936 and not through such deed. The record reveals no disavowal of title nor any assertion of an adverse right brought home to the remaindermen. *92 As to the improvements, no indication is made of the extent of such improvements placed on the property either by the widow or J.J. Lunsford, nor is there any showing of the value of these. Neither does it appear that Lunsford had paid anything for his occupancy of the property. No question is either raised in the pleadings or established by proof whereby an award might be made by the court for contribution.
It follows that the chancellor was eminently correct in decreeing that appellants had not established adverse possession under color of title for the statutory limitation period of seven years.
With reference to laches, appellants urge that about thirteen years had elapsed after Iola Moseley Lunsford and J.J. Lunsford acquired the deed to the property before the suit was filed. It must be noted that Iola Moseley Lunsford, the life tenant, died in August, 1950; that her second husband died in November, 1952; that thereafter W.L. Lunsford was appointed the administrator of his estate; and that then on February 4, 1953, this suit was instituted. So it is seen that less than three years intervened between the death of the life tenant and the institution of this suit, and only about three months from the time of the death of J.J. Lunsford.
The passage or lapse of time alone is insufficient to support the finding of laches. For the doctrine of laches to be sustained requires not only a showing of a lapse of time but that the delay was unreasonable and reacted to the disadvantage, injury, or prejudice of the person seeking to invoke it. Dacus v. Blackwell, Fla. 1956, 90 So.2d 324, 327, and Van Meter v. Kelsey, Fla. 1956, 91 So.2d 327, 332. Laches is an affirmative defense and the burden of proving it is on the one who asserts it. It must be proved by very clear and positive evidence, particularly where the application of the doctrine is to divest one of the ownership of land. Van Meter v. Kelsey, supra. The evidence does not sustain the defense of laches.
With respect to the court costs of the probate proceeding charged against appellees here, the chancellor in his order stated that he had examined the file in the county judge's court of the estate of J.J. Lunsford and that it appeared that the estate proceeding had been filed for the benefit of the property in question, although it was not described. It is provided by section 732.14, Florida Statutes, F.S.A., that costs in a probate proceeding may be awarded in the discretion of the county judge. The chancellor in this case awarded these costs based upon the examination by him of the estate file which from the record was apparently not in evidence in the present cause. The probate proceeding was a separate and independent one instituted in the county judge's court. The chancellor was in error and this award of costs against appellees should be disallowed.
In the view we take of this case it is not necessary to consider whether certain of the children of E.D. Moseley had attained their majority in sufficient time for the statute of limitations to run or laches to apply.
The decree is affirmed in all respects except as to the assessment of probate costs and reversed in that regard.
ALLEN and SHANNON, JJ., concur.