JONES, Justice.
This is the second appeal to this Court by Plaintiffs-Appellants. The first appeal was from an order of the trial court granting Defendant E. Davidson’s motion to dismiss. This Court, per Mr. Justice Bloodworth, reversed and remanded on July 9, 1976 (Hinesley v. Davidson, 335 So.2d 380 (Ala. 1976)). On October 31, 1979, after a hearing on the merits, the trial court entered a final judgment against the Plaintiffs. This appeal is taken from that action.
While Appellants adopt the fact summary from the prior appeal to this Court, Appel-lees are quick to point out that such reliance is misplaced because that appeal disposed of a ruling by the trial court on the pleadings which had not progressed beyond the stage of Defendant’s motion to dismiss. After remand, the Defendants filed answers raising factual issues which were supported by a comprehensive stipulation at the time of trial.
At the outset, we note that our inquiry concerns whether Appellees’ “additional evidence,” via the joint stipulation, was of a character and sufficiency to cause us to deviate from the principles enunciated in our initial opinion. Hinesley I. To this query, we answer in the negative. Again, we reverse and remand.
Stanley M. Waters, the father of Appellants and of the Defendant Stanley L. Waters, died on November 15,1936, while a resident of Baldwin County, Alabama, leaving certain real property in Baldwin County, Alabama. In his will, Stanley M. *2 Waters left all his property to his wife (who is now Virginia Waters Daw, a Defendant herein and mother of the Appellants and of the Defendant Stanley L. Waters) for the term of her natural life and, on her death, to Appellants and Defendant Stanley L. Waters, share and share alike.
The estate of Stanley M. Waters, at the time of his death, was subject to two encumbrances from Stanley M. Waters and Virginia B. Waters to the West Florida Naval Stores Company. Additionally, a vendor’s lien, reserved in a certain deed from J. T. Bradley and Agatha Bradley his wife, to S. M. Waters, dated June 5, 1935, was transferred and assigned by J. T. Bradley to the West Florida Naval Stores Company, by written assignment, on June 19, 1937. These mortgages and lien, and the indebtedness secured thereby, were duly transferred and assigned by West Florida Naval Stores to the Appellee Davidson, and H. L. Taylor, by written assignment, dated February 6, 1941. No formal foreclosure proceedings were ever undertaken by Davidson and Taylor under the mortgages and lien, but in February, 1941, Davidson and Taylor took possession and control of the subject property, except for the 40-acre “home place.”
At the time Davidson and Taylor took possession and control of the property, approximately $3,500.00 was due and owing on the debts of the deceased father, secured by the mortgages and lien. Davidson and Taylor paid the taxes on the land after taking possession, and, subsequent to the death of H. L. Taylor, taxes were paid by Davidson and successors to Taylor.
After Stanley M. Waters’s death, and at the time of the purchases of the mortgages and vendor’s lien by Davidson and Taylor, the mortgages and lien were in default and all the lands referred to in the mortgages and lien had been sold for taxes in two separate sales. After these tax sales, and after their purchases of the mortgages and lien, Davidson and Taylor redeemed all the land, paid all the back taxes, and thereafter had all the lands assessed in their names, except the Waters home place, to which they make no claim.
With the exception of the home place, Davidson and Taylor were in uninterrupted, exclusive possession of the subject property from 1941 until the present. By way of stipulation, the parties agree that, “[a]s of March 10, 1961 [the date of majority of the youngest child], all of the Waters children and the widow became charged with notice of the claims of Taylor and Davidson.”[1] This action commenced on March 28, 1974.
As heretofore stated, our focus is narrowed to whether, on this appeal, Appellees’ supplementation of those facts originally before this Court in Hinesley I is of a degree sufficient to compel a reversal by this Court of that earlier decision. While we now discern additional factual assertions by Appellees, not developed by the case as postured and presented in the first appeal, our response to the above inquiry remains in the negative.[2]
I. Possession of a Mortgagee after Default in Payment of the Mortgage Debt.
Appellees correctly cite Killian v. Everett, 262 Ala. 434, 79 So.2d 17 (1955), for the proposition that “possession of a mortgagee after default in payment of the mortgage *3 debt, without any recognition of his relation to the mortgagor, is adverse, and if such possession is continued for ten years, without recognition of any right in the mortgagor, will bar a recovery by the mortgagor.” See, also, Ward v. Chambless, 238 Ala. 165, 189 So. 890 (1939).
Appellees juxtapose Killian, supra, with their claim of adverse possession against Appellants as remaindermen. While the authority of Killian is clear, we beg to differ with Appellees’ interpretation and its application to the instant case. To adopt Killian, literally, as support for Ap-pellees’ claim of adverse possession against Appellants, as remaindermen, would, in our opinion, abrogate the general rule in this realm.[3] This, we cannot do.
II. Appellees’ Claim of Adverse Possession.
While Appellees concede the general axiom that remaindermen are not subject to claims of adverse possession against their future interests, they assert Duncan v. Johnson, 338 So.2d 1243 (Ala. 1976), for the proposition that their claim against Appellants falls without that purview. We cannot agree.
In Duncan, supra, the Court noticed an exception to the general rule as follows:
“Our cases, we think, are to the effect that in the absence of some special equity in an interest in property in addition to that of one’s interest as a life tenant, or a tenant pur autre vie, and knowledge or some reasonable notice thereof on the part of the remainderman, there is no duty on the remainderman to institute a proceeding to remove a cloud upon title of the remainderman, and the rights of the remainderman as such are not destroyed by the mere expiration alone of a period of time, whether ten years, twenty years or longer.” (Emphasis added.)
Duncan v. Johnson, supra, at 1254.
Appellees point to the joint stipulation, not previously before this Court, whereby it is conceded that their possession and claim of ownership of the subject property was known to the adult members of the Waters family. Appellees equate this stipulation with meeting the burden of proof sufficient for the trial court to infer compliance with the exception spoken to in Duncan.
While we admit to difficulty in ascertaining a precise, and possibly unambiguous, definition of “special equity,” we, again, in face of what we deem a strong social policy undergirding the basic rule, reject Appel-lees’ claim of title against these remainder-men via adverse possession. Here, though not called upon to set the outer limits of the objective effect of the “special equity” exception, we hold that the broad, generalized, conclusory language of the stipulation that the remaindermen had knowledge of Davidson’s and Taylor’s possession and claim of ownership of subject property falls short of the requisite proof to revoke the operation of the general rule.
Were we to adopt the position enticingly dangled before us by Appellees, one need thereafter only show possession coupled with a claim of ownership and notice thereof, and the protection afforded remainder-men per the general rule would be reduced to ashes. Suffice it to say that our careful study of the evidence of record, aided by the excellent briefs of counsel for Appel-lees, fails to disclose that the additional factual assertions contain any objective facts or circumstances from which the trial court could reasonably infer that Appellees had any “special equity” in an interest in the subject property so as to impose upon the remaindermen any duty to earlier assert their claim to it.
*4 Consequently, we are disinclined to divert our path from that laid down by Mr. Justice Bloodworth in his initial interpretation of this cause in Hinesley I. Therefore, the trial court’s order denying the remainder-men’s right of redemption is reversed; and this cause is remanded for further proceeding to adjudicate the respective parties’ redemptive rights.
REVERSED AND REMANDED.
All the Justices concur, except TOR-BERT, C. J., who dissents.

. Additionally, the stipulation states: “The possession and claim of ownership of the property made the basis of this action by Davidson and Taylor [were] known to the adult members of the Waters family when Davidson and Taylor were placed in possession of the property and the other plaintiffs have each known of the possession and claim of ownership of Davidson and Taylor since reaching their respective majorities and, certainly, since the year of 1961.”

. Appellees argue in brief that, by virtue of the stipulation, “[T]he appellees were assignees of the mortgagees and, after the death of the testator, it became obvious to all appellants that the appellees claimed an interest in the property other than the homeplace which was openly hostile to their status as remaindermen. The record is also undisputed that (1) the time frame on this period of knowledge is at least ten years prior to the bringing of this action and, (2) the appellees paid taxes on the property assessed in their names under color of legal title throughout this period.”

. As a general rule, the statute of limitations does not run against remaindermen during the existence of the life estate for the reason that no cause or compelling right of action is in them; nor can there by any possession adverse to the remaindermen, there being no immediate right of possession in the remaindermen. Pickett v. Doe, 74 Ala. 122 (1883); Bolen v. Hoven, 143 Ala. 652, 39 So. 379 (1905); Dallas Compress Co. v. Smith, 190 Ala. 423, 67 So. 289 (1914); Bishop v. Johnson, 242 Ala. 551, 7 So.2d 281 (1942). See, also, 51 Am.Jur.2d Life Tenants and Remaindermen § 15 (1970).