Defendant, Joe Scotch, appeals from an order denying his motion for new trial or amendment of judgment and from trial judgment quieting title to certain lands in plaintiffs, Emris Hurst, Harriet Clarke, and Peggy Arthur. We affirm in part; reverse in part; and remand. *Page 499 
In 1946, Harry Hurst purchased approximately thirty-five acres of land in Shelby County, Alabama, taking a warranty deed from George Huddleston. Hurst gave Huddleston a purchase money mortgage on the land to finance the purchase. In 1947, while the property was still under mortgage, Hurst and his wife, Juanita Hurst, sold a parcel of the property, containing approximately five acres, to Paul and Aldie Kelley, Juanita Hurst's parents. The Hursts continued to make the mortgage payments on the land, including the parcel sold to the Kelleys.
Harry Hurst died intestate in 1949, leaving as his heirs his widow, Juanita Hurst, and three children, Emris O'Neal Hurst, Harriet Hurst (Clarke) and Peggy Hurst (Arthur). The children were ages 12 years, 10 years, and 4 years, respectively, at the time of their father's death.
Following Harry Hurst's death, Juanita Hurst and George Huddleston entered into an agreement, dated December 28, 1949, which stated:
 "Said Huddleston is to foreclose the certain mortgage executed by Harry E. Hurst on April 20, 1946 to said Huddleston with reasonable promptness and is to buy in the property at the mortgage sale. He is thereupon to execute to Mrs. Juanita Hurst a warranty deed to that part of the land shown by her tax assessment with a clause excepting the right of redemption from the warranty."
Purportedly, the agreement was entered into to enable Juanita Hurst to keep her home and a portion of the property. It is unclear, from the record, whether the mortgage was even in default at the time of the foreclosure.
The terms of that agreement were not strictly followed, but the alleged intention of the agreement was accomplished through a series of transactions between Juanita Hurst and George Huddleston. In January 1950, Huddleston foreclosed on the Hurst mortgage and purchased the property himself at the foreclosure sale. On January 30, 1950, Huddleston executed a foreclosure deed to himself which described all of the property covered by the mortgage except the five-acre parcel previously sold to the Kelleys by the Hursts. The following day, January 31, 1950, Huddleston executed a statutory warranty deed conveying the property described in the foreclosure deed to Juanita Hurst. The warranty deed states that Mrs. Hurst "has expressed the desire to redeem such lands from said foreclosure sale and has paid and satisfied to the undersigned George Huddleston the sum required to redeem said land." The warranty deed reads:
 "To have and to hold to the said Mrs. Juanita Hurst all as fully as can or should be under the exercise by her of her statutory right of redemption as widow of said Harry E. Hurst, her heirs and assigns forever."
There is no evidence that Mrs. Hurst paid anything to redeem the property, nor is it shown that Mr. Huddleston required any payment. An examination of the record shows that the children of Juanita Hurst contributed nothing to the cost of said redemption nor were they asked by Mrs. Hurst to contribute.
Also on January 31, 1950, Juanita Hurst executed a warranty deed to George Huddleston conveying back to him the largest portion of the land she had just redeemed, approximately 25 acres, reserving for herself a small portion, about 5 acres, including her log cabin.
Later that year, 1950, Juanita Hurst married one James Foster. Following the marriage, in 1951, Juanita Hurst Foster conveyed the parcel containing the log cabin (except a small portion thereof) to her parents, the Kelleys and, in exchange, the Kelleys conveyed to her the parcel of land (except a small portion thereof) that they had bought from Harry and Juanita Hurst. Several years later, on September 23, 1960, for some reason not reflected in the record, the Kelleys again executed a deed for the same parcel (the one they bought from the Hursts) to Juanita Hurst Foster and, that same day, Mrs. Foster conveyed the property to defendant, Joe Scotch. *Page 500 
Mr. Huddleston, in 1953, conveyed the 25-acre tract to W.B. McWilliams, and Mr. McWilliams, in 1955, conveyed that tract to Mid-South Development Corporation. Mid-South also acquired title to the 5-acre parcel containing the log cabin by subsequent deeds from the Kelleys to Harry W. Cowl and from Cowl to Mid-South in 1955.
Mid-South, having rejoined title to most of the original Hurst tract, then roughly subdivided the property, together with an adjoining 40-acre tract, and filed a subdivision plat of "Lincoln Park" in the Shelby County Probate Office in 1955. Mid-South executed deeds conveying various lots within the subdivision to other individual grantees, including one to Mrs. Aldie Kelley, Juanita Foster's mother.
In 1960, Mid-South conveyed title to approximately 30 acres of the property originally owned by Hurst to Joe Scotch. As previously stated, Scotch had bought the other 5 acres of the original Hurst property from Juanita Hurst Foster, so that in 1960 he purportedly held and still holds title to all the original Hurst property (except very small portions thereof as previously noted). The original Hurst property is the subject of this lawsuit and Joe Scotch is a defendant in that regard.
The record shows that since 1960, Mr. Scotch has visited the original Hurst property very infrequently and has made no improvements thereon. Mr. Scotch did testify that he had either given or sold one lot from the property to his son and his son had built a house thereon.
The plaintiffs, Emris Hurst, Harriet Clarke, and Peggy Arthur lived on the property as children and moved away as they grew up. In 1955 Emris Hurst joined the Navy and remained away from the property until 1974, when he retired from service.
Between 1955 and 1974, Emris returned a few times to see his mother. Harriet Clarke married and moved away from the property in 1959. As for Peggy Arthur, the record merely shows that she married and moved away from the property sometime before 1960. The daughters also came back to the property for infrequent visits to their mother.
The testimony indicates that from the time they were children, plaintiffs thought that they held title to all of the original Hurst property subject to a life estate in their mother, Juanita Hurst Foster. Emris Hurst testified that he returned to the property in 1974, intending to build a house thereon. At that time he noticed that roads had been cut through the property without the family's permission and that houses had been built on or near the edge of the property.
Mr. Hurst testified that after inspecting the property he went immediately to the Shelby County Courthouse to inquire about the improvements. He was informed that Mid-South Development Corporation had sold the property to various individuals. Mr. Hurst realized at that time that he needed to do something to protect his interest, and that of his sisters, in the property. He immediately sought legal counsel in Columbiana, but was refused representation. Mr. Hurst then hired an attorney from Birmingham who purportedly worked on the case for three years before the Hurst family fired him. Mr. Ralph Coleman, who was then retained by the family as their attorney, filed suit on their behalf on May 16, 1979, to quiet title in them to all of the original Hurst property. Joe Scotch and Mid-South Development Corporation were named as defendants to the suit, along with several fictitious parties. The various individuals who had bought lots in the "Lincoln Park" subdivision from Mid-South were not made parties to the lawsuit. Mid-South failed to answer the complaint. In his answer Scotch pleaded the general issue and argued that plaintiffs' cause of action was barred by the statute of limitations, prescription, laches, and that plaintiffs had no interest in the property because they failed to make contribution to their mother when she redeemed the property.
The trial judge, after hearing the evidence ore tenus, found in favor of plaintiffs on all counts and quieted title to the property in Emris Hurst, Harriet Clarke, and Peggy *Page 501 
Arthur, subject to a life estate in their mother, Juanita Foster.
Defendant Joe Scotch is before this court appealing the final judgment and the trial court's denial of his motion for new trial or amendment of judgment. Scotch's first argument on appeal is that the trial court erred in finding that the redemption from the mortgage foreclosure in 1950 by Juanita Hurst, in her name alone, was a redemption for her children, the remaindermen, as well as for herself and that, in this case, the remaindermen were not required to make contribution in order to secure their remainder interest. We do not agree.
It is well-settled that, in Alabama, a life tenant who redeems property after a foreclosure sale redeems for the benefit of the remaindermen as well as for herself. SeeSullivan v. Parker, 228 Ala. 397, 153 So. 858 (1934); Garrettv. Snowden, 226 Ala. 30, 145 So. 493 (1933); Rushton v.McLaughlin, 213 Ala. 380, 104 So. 824 (1925). It is axiomatic, therefore, that following redemption Mrs. Hurst held the property for herself and for the benefit of her children, the remaindermen. Any subsequent conveyance by Mrs. Hurst after execution of the redemption deed passed the property subject to the remaindermen's interests.
Concerning contribution, there is authority for the proposition that the remaindermen have a duty to contribute to the expenses of redemption within a reasonable time. See Draperv. Sewell, 263 Ala. 250, 82 So.2d 303 (1955); Ward v.Chambless, 238 Ala. 165, 189 So. 890 (1939); Rushton v.McLaughlin, supra. Other cases state that the life tenant has a right to seek contribution or to interplead the remaindermen to contribute. See Garrett v. Snowden, supra; Abney v. Abney,182 Ala. 213, 62 So. 64 (1913). A search of the available authority indicates that in every case either the life tenant was seeking contribution from a remainderman or claiming full title to the property due to the remainderman's failure to contribute. There are no cases in Alabama where a third party asserts lack of contribution in defense of title.
Under either line of authority, it seems clear that, in the instant case, the remaindermen have not lost their interests for failing to offer contribution. First, the life tenant, Juanita Hurst, did not ask, demand, interplead or in any way require contribution from her children at the time of redemption or anytime thereafter. Second, the remaindermen were minors at the time of the redemption and no guardian ad litem was appointed to protect their interests. Furthermore, Mrs. Hurst conveyed the property, purportedly in fee, on the same day she redeemed it, giving the children no notice or opportunity to offer contribution.
Moreover, the record indicates that Mrs. Hurst paid nothing to Mr. Huddleston to redeem the property; therefore, the remaindermen may be considered to have paid their share of the cost of redemption, i.e. nothing. Appellant's assertion that Mrs. Hurst paid "her right under the law to redeem" the 25-acre portion from the mortgage foreclosure is without merit, since she did in fact redeem the entire parcel (except for the parcel sold to the Kelleys, which had been left out of the foreclosure deed) as the redemption deed indicates. Although it appears that Mrs. Hurst's conveyance of a 25-acre parcel back to Mr. Huddleston was in payment of the redemption, neither the redemption deed, the warranty deed, nor any other legal document or agreement confirms this assertion. Furthermore, the redemption deed states that Mrs. Hurst had paid the "sum required" to redeem before the warranty deed to the 25-acre parcel was executed. We conclude that, under the facts presented here, the trial court did not err in its finding that the life tenant, Mrs. Hurst, redeemed the property for the benefit of the remaindermen, as well as for herself, and that the children did not lose their interest in the property due to failure to contribute.
Appellant further asserts that the trial court erred in its finding that appellees' claim was not barred by laches. While appellant concedes the general rule that remaindermen have no duty to remove a *Page 502 
cloud on their remainder interest during the life of the life tenant, he cites Duncan v. Johnson, 338 So.2d 1243 (Ala. 1976), for the proposition that this case falls within an exception to the general rule.
In Duncan, supra, the court stated:
 "Our cases, we think, are to the effect that in the absence of some special equity in an interest in property in addition to that of one's interest as a life tenant, or a tenant pur autre view, and knowledge of some reasonable notice thereof on the part of the remainderman, there is no duty on the remainderman to institute a proceeding to remove a cloud upon title of the remainderman, and the rights of the remainderman as such are not destroyed by the mere expiration alone of a period of time, whether ten years, twenty years or longer."
Duncan v. Johnson, supra, at 1254. Appellant argues that circumstances peculiar to this case, namely the presence of a mortgage foreclosure, a redemption in the name of the life tenant alone, and subsequent deeds purporting to convey full title to the property over a twenty-nine year period, combined to impose the "special equity," described in Duncan, supra, upon the appellee-remaindermen. He further argues that the "special equity" having been imposed, the appellees had a duty to diligently assert their claim to the remainder, even before termination of the life estate, or be barred by laches from such assertion.
As we noted in Hinesley v. Davidson, 395 So.2d 1, 3 (Ala. 1981), a precise and unambiguous definition of "special equity" is elusive and, again, we are not called upon to set the outer limits of the objective effect of the "special equity" exception.
A reading of the cases in which a "special equity" has been imposed generally indicates that the purpose of the exception is to protect subsequent purchasers or transferees who take title to land without any record notice of a remainder interest. A good statement of this policy is found in Ussery v.Darrow, 238 Ala. 67, 72, 188 So. 885, 889 (1939), which states that the "special equity" exception applies to
 "a situation where the records and chain of title are all such as that they not only purport to pass the entire fee and all interests, but taken alone in fact do so, and when the only matter which will create a different result is collateral, not shown or suggested by the chain of title, nor public records judicially known, or to which the record refers. There is then an inchoate right which must be asserted to prevent the title from passing in fact as it purports to pass on its face. It resembles a cloud on a title.
 "The principle is distinguishable from one which applies when a life tenant undertakes to convey the remainder, but it does not have that effect because the chain of title shows that he only has and can only convey a life estate. A remedy under such circumstances by the remainderman to clear the situation is available but not obligatory, because the public need not be misled."
See also Wragg v. City of Montgomery, 245 Ala. 362,17 So.2d 173 (1944); Dallas Compress Company v. Smith, 190 Ala. 423,67 So. 289 (1914).
In the instant case, the original redemption deed taken by Juanita Hurst Foster suggests on its face that she does not have title in fee to the redeemed land. The deed conveys the property:
 "To have and to hold to the said Mrs. Juanita Hurst all as fully as can or should be under the exercise by her of her statutory right of redemption as widow of said Harry E. Hurst, her heirs and assigns forever."
This provision on its face gives notice to the public that Mrs. Foster might not have fee simple title to the land in question, and a search of the records by a subsequent purchaser would easily reveal this possibility of infirm title. Consequently, the need to invoke the special equity exception in this case is obviated since the underlying policy consideration, i.e., protection of innocent purchasers, does not apply.
We hold, therefore, that no "special equity" exists under these facts which would *Page 503 
require the appellees to act to protect their remainder interests before the death of the life tenant. Accordingly, the lower court did not err in its finding that the appellees' claim was not barred by laches.
Appellant's final contention is that the trial court erred in its finding that appellees were to be given title to the 5-acre parcel which Harry and Juanita Hurst sold to Paul and Aldie Kelley from the original Hurst property. Appellant claims title to this parcel not through the mortgage foreclosure proceedings but through a different source of title. Appellant contends that appellees did not meet their burden of proving title superior to the title of appellant to this parcel of land. We agree.
The record shows that the 5-acre parcel sold to the Kelleys by the Hursts was not affected by the mortgage foreclosure proceeding. The parcel was conveyed to the Kelleys before the foreclosure proceedings, apparently still subject to the mortgage. The mortgage foreclosure deed, however, did not include the parcel in its description of the foreclosed property. The property described in the foreclosure deed was sold and the mortgage covering the whole of the original Hurst property was satisfied. Also, the redemption deed taken by Juanita Hurst did not include a description of the five-acre parcel. The Kelleys, therefore, held title to their parcel unencumbered following the mortgage sale.
The parcel, except a small portion thereof, was then validly conveyed by the Kelleys to Juanita Hurst Foster and by Mrs. Foster to appellant Joe Scotch. The record shows that appellees did not present evidence sufficient to defeat appellant's title to the five-acre parcel sold to the Kelleys by the Hursts. The decision of the lower court giving title to the 5-acre parcel which was not affected by the mortgage foreclosure sale is erroneous and is due to be reversed.
After a careful examination of the record and consideration of the briefs and arguments of counsel for both sides, the court affirms the decision of the lower court as stated herein and reverses the decision only as it affects the 5-acre parcel sold to the Kelleys by the Hursts; and the cause is hereby remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ.