864 So.2d 24 (2003)
CARROLL & ASSOCIATES, P.A., Appellant,
v.
Rafael GALINDO, etc., et al., Appellees.
Nos. 3D03-916, 3D03-1345.
District Court of Appeal of Florida, Third District.
November 19, 2003.
Rehearing Denied January 23, 2004.
*25 Linda L. Carroll, Miami, for appellant.
Ruden, McClosky, Smith, Schuster & Russell and John H. Pelzer and Norman S. Segall, Miami, for appellees.
Before SCHWARTZ, C.J., and GREEN, and WELLS, JJ.

*26 ON REHEARING

WELLS, Judge.
We have for consolidated review Carroll & Associates, P.A.'s appeal from a final summary judgment of foreclosure in favor of Rafael and Nelly Galindo[1] and Carroll's motion for rehearing in Carroll's earlier appeal from an order granting summary final judgment on Carroll's cross-complaint against the Galindos. For the following reasons, we deny rehearing in Case Number 3D02-1345 regarding the summary judgment on Carroll's cross-complaint, substituting this opinion for our earlier opinion in that matter, and reverse the final summary judgment of foreclosure which is the subject of Case Number 3D03-916.

I

Facts Relevant to Both Appeals
In 1995, Philip Feigenblatt acquired a fee simple interest in a condominium located in Bal Harbor, Florida. He subsequently conveyed a life estate interest in this condominium to his mother, Flora Rojas Parks, retaining the remainder interest for himself. In early 1998, Carroll obtained a $9,381 final judgment against Feigenblatt for unpaid legal fees. That judgment was recorded in the property records of Miami-Dade County on May 28, 1998.
Less than a month later, on June 17, 1998, the Galindos entered into an agreement to lease Feigenblatt's and Parks' Bal Harbor condominium until June 16, 1999 (or, if extended, until June 2000) with an option to purchase upon the Galindos' sale of another unit in the building. That agreement accorded exclusive occupancy of the Feigenblatt/Parks condominium to the Galindos in exchange for the Galindos' agreement to pay, among other things, Feigenblatt's and Parks' mortgage payments to EMC Mortgage Company. The Galindos also agreed to "satisfy the outstanding mortgage with EMC" upon closing of the sale.
The Galindos thereafter timely exercised the option to purchase the unit paying $25,000 (as required by the parties' agreement) to Feigenblatt and Parks. But before a closing could take place, Carroll acted to protect its interest in the property by foreclosing its recorded judgment lien against Feigenblatt's remainder interest. A writ of execution was issued and a notice of levy recorded against the condominium. In addition, a notice of Sheriff's sale of Feigenblatt's remainder interest in the condominium was advertised, served on Feigenblatt and provided to the Galindos. Feigenblatt and the Galindos unsuccessfully sought court intervention to cancel the public sale of Feigenblatt's remainder interest, and on February 10, 1999, with the Galindos' attorney present, the Sheriff conducted a public auction of Feigenblatt's remainder interest in the condominium. The Galindos' attorney did not bid on their behalf, and Carroll, the highest bidder, purchased Feigenblatt's remainder interest for $4,500 and received a Sheriff's deed conveying the remainder interest to it.
The Galindos continued to live in the condominium following the Sheriff's sale and made monthly mortgage payments to EMC as agreed until April 1999 when they ceased making payments.
In September 1999, Independent National Mortgage Corporation, claiming to be the holder of a note secured by a mortgage on this property, brought suit to *27 foreclose the mortgage.[2] Feigenblatt, Parks, the Galindos, and Carroll were joined as defendants in the foreclosure action as having some right, title or interest in the property.
One month later, the Galindos brought a separate suit against Feigenblatt, Parks, and Sally Sawh, their prior attorney, seeking (1) title to Parks' life estate via specific performance of the Feigenblatt/Parks agreement; (2) damages against Feigenblatt and Parks for the diminished value of the condominium sale contract (due to Carroll's ownership of the remainder interest); and (3) damages against Sawh for failing to bid on Feigenblatt's remainder interest at the Sheriff's sale. In that action, the Galindos expressly elected to be bound by their agreement with Feigenblatt and Parks, and although they had failed to make monthly mortgage payments as agreed and had been joined as defendants in an action to foreclosure that mortgage, they affirmatively alleged that they had "fully performed all that was to be done on their part [under the agreement]" and stood "ready, willing and able to do any and all further things which ... may be required of them."
In the meantime, the Galindos asked the court in the mortgage foreclosure action to permit them, "as contract purchasers and tenants of the [Feigenblatt/Parks] property," to redeem the mortgage and to enter an order subrogating them to the mortgagee's rights in the foreclosure action. Carroll objected. In late February 2000, while this request was pending, the Galindos obtained the "payoff figures" for, and paid off, the loan secured by the Independent National mortgagethe loan the Galindos had obligated themselves to pay in their agreement with Feigenblatt and Parks.[3] Two months later, the trial court granted the Galindos' motion for redemption effectively ordering satisfaction of the loan.
Three months later, and almost six months after the Galindos' had paid-off the loan, Independent National executed an assignment of the Feigenblatt note and mortgage to the Galindos. Based on this assignment, the Galindos obtained leave to "realign" the parties in the Independent National foreclosure suit to substitute themselves as plaintiffs. Alleging that Feigenblatt had failed to pay the note and mortgage after April 1999, an obligation that they had agreed to pay in a contract that they were seeking to enforce in another court, the Galindos sought to foreclose.
On January 17, 2002, the Galindos obtained a judgment against Parks in the suit against Feigenblatt, Parks, and Sawh, granting specific performance of the Feigenblatt/Parks agreement. Parks was ordered to deliver a warranty deed conveying her life estate interest in the condominium to the Galindos. Less than two weeks later, the Galindos moved for summary judgment on Carroll's crossclaims against them in the foreclosure action. That cross-claim sought to determine ownership and possessory rights in the condominium and to hold the Galindos liable for "unpaid" mortgage payments, assessments and expenses while they were in possession of the condominium.
Using their recently acquired judgment in the specific performance action, the Galindos argued entitlement to both possession of, and title to, a life estate in the property. They also represented that all *28 payments were current on the condominium. Their motion for summary judgment on Carroll's cross-claim was granted with the trial court finding that: (1) Carroll succeeded to Feigenblatt's remainder interest in the condominium when it purchased that interest at the Sheriff's foreclosure sale; (2) the Galindos held a life estate interest in the condominium; and (3) the Galindos had redeemed the mortgage that was the subject of the foreclosure suit and were current on all condominium expenses. The trial court also found that as a consequence of the Galindos' actions in paying $25,000 to purchase a life estate, in redeeming the mortgage, and in paying all expenses related to the condominium, they had acquired a superior "equitable" right to title in the condominium. Consequently, Carroll's claims for declaratory judgment, to quiet title, and for damages were dismissed with prejudice, and Carroll was ordered to "execute a special warranty deed [conveying its remainder interest in the condominium] in favor of the Galindos," upon the Galindos' payment of $4,500 to Carroll. Carroll appealed from this judgment.
While that appeal was pending, the Galindos moved for and were granted a final judgment of foreclosure. Carroll has appealed the foreclosure judgment as well, and we have, on rehearing, consolidated the earlier cross-claim appeal with the foreclosure appeal.
We affirm that portion of the summary judgment on Carroll's cross-claim dismissing Carroll's request to declare the Galindos to have no legal or possessory rights in the condominium and to order them to pay damages. However, we reverse that portion of the summary judgment ordering Carroll to convey its remainder interest to the Galindos. We also reverse the foreclosure judgment and remand for dismissal of that action.

II

The Summary Judgment on Carroll's Cross-Claims
Because the unrebutted record (as well as counsel's representations at oral argument) shows that the Galindos hold a life estate interest in the condominium and have redeemed or satisfied the outstanding first mortgage and assumed responsibility for, and have paid, all assessments, taxes and expenses related to the condominium, that portion of the summary judgment dismissing Counts I through IV of Carroll's cross-claim against the Galindos, is affirmed.
There is, however, no support for that portion of the trial court's order obligating Carroll to convey its remainder interest to the Galindos. The pleadings do not suggest any basis on which Carroll's deed may be nullified or on which Carroll may be obligated to transfer its interest. There also is no evidence to support such an order. "Florida law clearly holds that a trial court lacks jurisdiction to hear and to determine matters which are not the subject of proper pleading and notice." In re Estate of Hatcher, 439 So.2d 977, 980 (Fla. 3d DCA 1983) (footnote omitted); see also McDonald v. McDonald, 732 So.2d 505, 506 (Fla. 4th DCA 1999)(holding that "when an award of relief is not sought by the pleadings, it is reversible error to grant such relief"); Instituto Patriotico Y Docente San Carlos, Inc. v. Cuban American Nat'l Found., 667 So.2d 490, 491 (Fla. 3d DCA 1996) (finding the lower court was without jurisdiction in a summary judgment order to, sua sponte, incorporate additional findings and directives "which were never presented to the court as issues in any party's pleadings, evidence or argument on the motion for summary judgment").
*29 To allow a court to rule on a matter without proper pleadings and notice is violative of a party's due process rights. See Epic Metals Corp. v. Samari Lake East Condo. Ass'n, Inc., 547 So.2d 198, 199 (Fla. 3d DCA 1989) ("[a] trial court violates a litigant's due process rights when it expands the scope of a hearing to address and determine matters not noticed for hearing"); Robinson v. Malik, 135 So.2d 445 (Fla. 3d DCA 1961)(a final judgment that "goes beyond the issues framed in the pleadings and beyond the proof adduced" is a "clear departure from the requirements of due process of law").
Accordingly, that portion of the summary judgment confirming that the Galindos hold a life estate in the condominium, are current in all payments related to it, and dismissing counts I through IV of Carroll's cross-claim is affirmed. That portion of the summary judgment requiring Carroll to execute a special warranty deed transferring its remainder interest in the condominium to the Galindos upon the payment of $4,500 plus interest is reversed and remanded with instructions to enter judgment declaring Carroll to be the owner of, and quieting title in Carroll to, a remainder interest in the condominium.

III

The Summary Judgment on the Galindos' Foreclosure Claim
The Galindos claim that they did not satisfy the Independent National mortgage when they paid it off or "redeemed it," but that they purchased the mortgage from Independent National and, as assignees under a written assignment, are entitled to foreclose that mortgage which encumbers both their life estate and Carroll's remainder. We disagree.
We first note that the Galindos' suggestion that they did not have to satisfy this mortgage but had the right to purchase it "just as anyone else in the world could have done," is suspect in light of the Galindos' affirmative representations in the specific performance action that they had "fully performed all that was to be done on their part [under the agreement with Feigenblatt and Parks]." That agreement obligated the Galindos to "satisfy" the mortgage, not to take title to an interest in Feigenblatt's and Parks' property while becoming their secured creditor.
Even if the Galindos "had the right to purchase this mortgage position, just as anyone else in the would could have," as they state, they still could not foreclose it. They cannot foreclose against the life estate since they already have title to it, and the Galindos as life tenants cannot foreclose to the prejudice of the remainder estate.
The relationship of a life tenant to a remainderman is that of a trustee or quasi-trustee, not that of strangers. See Chapman v. Chapman, 526 So.2d 131, 135 (Fla. 3d DCA 1988) (noting that "[t]he duty owed by life tenants to remaindermen is comparable to that of a trustee or quasitrustee"); Wagner v. Moseley, 104 So.2d 86, 90 (Fla. 2d DCA 1958). Thus, as a general rule, a life tenant cannot acquire, either directly or indirectly through an intermediary, title or an interest, claim or encumbrance for the life tenant's exclusive use against a remainderman. See Chapman, 526 So.2d at 135 (holding that "the life tenant cannot injure the property to the detriment of the remaindermen"); Wagner, 104 So.2d at 90; Thomas v. First Nat'l Bank of Chicago, 134 Ill.App.3d 192, 89 Ill.Dec. 8, 479 N.E.2d 1014, 1029 (1985)(noting that life tenants have the duty to prevent waste and not to manipulate title so as to defeat the remainderman's *30 interest in the property); Matter of Miller's Estate, 225 Kan. 655, 594 P.2d 167,170 (1979)(noting that a life tenant has a duty to act honorably and in good faith with respect to the remainderman). In this regard, it has been stated:
While a life tenant may be a purchaser at a sale to satisfy an encumbrance, neither the life tenant nor one claiming under him, who allows the property to be sold for taxes or the satisfaction of an encumbrance, or the interest thereon, can acquire a title adverse to the remainderman or reversioner by purchasing at the sale himself, or through an intermediary, or by obtaining a conveyance of the title acquired by another purchaser at such sale. Such a transaction amounts simply to a payment or redemption and results in a restoration of the rights of the remainderman, as well as of the life tenant, the life tenant thereby reacquiring his life estate, but no more.
31 C.J.S. Estates § 33 (2003)(footnotes omitted); see also Wagner, 104 So.2d at 90 (finding that "a life tenant cannot acquire an outstanding title, interest, claim, or encumbrance for his own exclusive use against a remainderman ... but it will be deemed as having been acquired for the benefit of the life tenant and the remainderman"); Scotch v. Hurst, 437 So.2d 497, 501 (Ala.1983)(finding that "a life tenant who redeems property after a foreclosure sale redeems for the benefit of the remaindermen as well as for herself").
The Galindos cannot, therefore, acquire title to the remainder estate at a foreclosure sale. Nor can they force Carroll, upon peril of losing title to the remainder interest, to pay them at a foreclosure sale, the outstanding principal balance of the first mortgage, as well as accrued taxes, default interest, and costs, expenses and attorney's fees incurred as a consequence of the Galindos' failure to keep the Independent National mortgage current (all without credit for the fair rental value of the condominium while the Galindos have lived there "rent-free" for the past four and one-half years).
This is especially so since the Galindos, who caused the mortgage they now hold as assignees to go into default in the first instance, appear to have less than clean hands. See Limner v. Country Pines Condo. Ass'n, Inc., 709 So.2d 154 (Fla. 4th DCA 1998)(confirming that the unclean hands doctrine applies to the equitable remedy of foreclosure); Knight Energy Servs., Inc. v. Amoco Oil Co., 660 So.2d 786, 789 (Fla. 4th DCA 1995)(holding that a "foreclosure action is an equitable proceeding which may be denied if the holder of the note comes to the court with unclean hands or the foreclosure would be unconscionable"); Lamb v. Pike, 659 So.2d 1385, 1387 (Fla. 3d DCA 1995) (stating that unclean hands is a valid equitable defense to a foreclosure action); Sponder v. Equity Capital Co., 248 So.2d 251, 252 (Fla. 3d DCA 1971)(finding that a junior mortgagee with unclean hands should be denied the equitable relief of foreclosure).
Accordingly, the final judgment of foreclosure is reversed and the cause remanded with instructions that the foreclosure action be dismissed.
NOTES
[1] These actions were prosecuted by and against the Galindos individually and as trustees of the Rafael and Nelly Galindo Revocable Inter Vivos Trust.
[2] On this appeal, the parties do not dispute that this was the mortgage referred to in the Feigenblatt/Parks-Galindo agreement as the EMC mortgage.
[3] The total amount paid was $225,184.22: $193,482.22 in principal, $20,090.32 in interest, and the balance for late charges, taxes, costs and fees.