659 So.2d 1385 (1995)
Charles LAMB and Lena Lamb, His Wife, Appellants,
v.
Michael J. PIKE and Virginia pIke, His Wife, Appellees.
No. 94-2914.
District Court of Appeal of Florida, Third District.
September 13, 1995.
*1386 Alexander L. Martone, Boca Raton, for appellants.
Simon Schindler & Sandberg and Theodore R. Dempster and Roger J. Schindler, Miami, for appellees.
Before JORGENSON, COPE and GREEN, JJ.
PER CURIAM.
Defendants, Charles and Lena Lamb, appeal from an order in a foreclosure action granting plaintiffs, Michael and Virginia Pike's, motion for summary judgment on liability, accelerating mortgage payments, and striking defendants' pleadings. For the following reasons, we reverse.
In 1990, defendants purchased their home from plaintiffs, who took back a wraparound mortgage subject to an existing first mortgage on the property. Two years later defendants missed a mortgage payment to the plaintiffs for the first time: the payment due August 30, 1992, five days after Hurricane Andrew had severely damaged the home.[1] On October 5, 1992, plaintiffs' filed a foreclosure complaint and on October 6, 1992, obtained an ex parte order appointing plaintiff Virginia Pike receiver of the property. In the ex parte motion for receiver, plaintiffs alleged that the home had been abandoned and was in need of repair to prevent waste following the hurricane. Three weeks later, after defendants had appeared in the action and contested plaintiffs' allegations, the trial court quashed the order appointing receiver.
For the next two years the action continued while defendants made approximately twenty mortgage payments, some of them late, until failing to make any payments after March 1994. Since the hurricane, the home has not been rebuilt and has remained uninhabitable, despite the home insurer's payment of approximately $99,000, which apparently would have covered the repair costs. For reasons not clear from the record, after an initial insurance check for $10,000 was released to plaintiff Virginia Pike during her brief stint as receiver, a second insurance check for $89,000 was endorsed and delivered to the first mortgage company, which placed the funds in escrow.
In June 1994, the trial court entered an order both acknowledging the first mortgagee's election to apply approximately $45,000 of the insurance proceeds to satisfy the outstanding first mortgage indebtedness and directing the remainder of the proceeds to be disbursed and applied towards the reduction of the outstanding indebtedness under the second note and mortgage held by the plaintiffs. In November 1994, the trial court granted plaintiffs' motion for summary judgment as to liability on the foreclosure complaint, found the payments under the second note and mortgage accelerated, and struck defendants' pleadings for failure to comply *1387 with an earlier order directing them to make monthly mortgage payments into the court registry.
Throughout these proceedings, defendants have maintained that plaintiffs' own actions have ousted and prevented defendants from rebuilding their home, which ultimately prevented them from being able to make mortgage payments. For example, in their affirmative defenses, defendants have alleged that plaintiffs defrauded the court at the initial ex parte hearing where plaintiff was appointed receiver, interfered with construction contracts, and misused insurance proceeds. These allegations are supported by competent record evidence and, taken as true, may provide defendants valid equitable defenses to the foreclosure action.[2]See Star Lakes Estates Ass'n v. Auerbach, 656 So.2d 271, 272 (Fla. 3d DCA 1995) (Schwartz, C.J., specially concurring) (summary judgment in foreclosure action precluded by "substantial, unresolved defenses that ... the action was barred under the clean hands doctrine"); Indianapolis Morris Plan Corp. v. Portela, 364 So.2d 840, 841 (Fla. 3d DCA 1978) (plaintiff "was without clean hands and the trial court did not abuse its discretion in refusing to lend equity powers to enforce the mortgage"); Campbell v. Werner, 232 So.2d 252, 256-57 (Fla. 3d DCA 1970) ("foreclosure on an accelerated basis may be denied where ... payment was not made due to ... excusable neglect coupled with some conduct of the mortgagee which in measure contributed to the failure to pay when due... ."); Overholser v. Theroux, 149 So.2d 582, 583 (Fla. 3d DCA 1963) ("A court of equity has the power of relieving a mortgager from the effect of an operative acceleration clause in a mortgage where the default of the mortgagor is the result of some unconscionable or inequitable conduct of the mortgagee... .") (quoting 22 Fla. Jur., Mortgages, § 214); Lieberbaum v. Surfcomber Hotel Corp., 122 So.2d 28, 28-29 (Fla. 3d DCA 1960) ("There can be no doubt of the right of a chancellor to deny foreclosure based upon an acceleration where there are substantial equities in the case which render the acceleration unconscionable.").
Defendants have raised material issues of fact, and the trial court erred in granting summary judgment on liability and in accelerating the mortgage payments.[3] Further, the trial court improperly struck defendants pleadings for failure to comply with a prior order that defendants make monthly mortgage payments into the court registry. Defendants' compliance with that order was allegedly hampered by plaintiffs' own conduct.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Defendants have alleged that the source of their mortgage payment funds, defendant Charles Lamb's Veterans' Administration check, was delayed in the mail by the hurricane, and that the August 30, 1995, payment was made on September 25, 1995.
[2] We do not reach whether we should recognize an implied covenant of good faith and fair dealing in residential mortgages that would also require reversal. Other jurisdictions have held that such an implied covenant bars a mortgagee from grabbing the proceeds of a home insurance policy maintained by the mortgagor where the alleged default arises from the same casualty which produced the insurance funds. See, e.g., Schoolcraft v. Ross, 81 Cal. App.3d 75, 146 Cal. Rptr. 57 (1978).
[3] Apparently, the predecessor to the judge who entered the summary judgment order on appeal had recognized material issues of fact sufficient to require a trial. He later recused himself after the close of evidence in the bench trial in February 1994.