935 So.2d 557 (2006)
Howard BEAN, Appellant,
v.
Michael A. PREVATT, Appellee.
No. 2D05-4005.
District Court of Appeal of Florida, Second District.
July 7, 2006.
Rehearing Denied August 17, 2006.
Howard Bean, pro se.
Lex Taylor of Lex Taylor, P.A., Lakeland, for Appellee.
*558 ALTENBERND, Judge.
Howard Bean appeals a final judgment that requires him to release insurance proceeds to Michael A. Prevatt, who holds a mortgage on Mr. Bean's property. Mr. Bean received the insurance proceeds, which total over $12,000, for damages his property sustained during Hurricane Jeanne. Mr. Prevatt intends to apply the entirety of the insurance proceeds to the principal amount due on the mortgage (approximately $37,000), even though this will make it difficult or impossible for Mr. Bean to repair the significant structural damage to his mobile home. We reluctantly affirm this judgment because the agreement between the parties specifically authorizes this relief and no statute prevents it. However, we suggest the Florida Legislature consider some minimal regulation in this area to ensure that homeowners are reasonably permitted to rebuild in the aftermath of destructive hurricanes, at least when doing so will not impair another party's security interest in the property.
Mr. Bean purchased a lot and mobile home from Michael A. Prevatt in Polk County on July 3, 2001. He paid $42,000 for the property. He made a down payment of $3000 and financed the rest with Mr. Prevatt at twelve percent interest, payable at $420 per month through September 2023. Pursuant to the agreement for deed the parties signed, Mr. Bean was required to pay the property taxes and "keep the improvements on said property in good repair and condition." Another provision required Mr. Bean
[t]o keep the buildings now or hereafter on said land insured against loss by fire, windstorm and tornado to the extent to the value of such improvements, in some company or companies acceptable to the first party [Mr. Prevatt] with the loss payable to the first party as his interest *559 may appear and to pay the premiums on such policy or policies when due and upon issue of such policies to promptly deposit them with the first party and agrees that the proceeds of any such insurance policies shall be applied to the payment of the indebtedness herein, or at the option of the first party, to the repair or replacement of the improvements upon said property.
Mr. Bean obtained insurance coverage from Foremost Insurance Company, which included standard coverage for windstorm damage. From our limited record, nothing suggests that Mr. Bean had any difficulties making proper payments and maintaining the property for the next several years. Then several hurricanes swept through Polk County in the fall of 2004. On September 26, 2004, Mr. Bean's mobile home sustained significant structural damage during Hurricane Jeanne. The damage to the roof of the structure permitted water intrusion into the home where Mr. Bean lives with his daughter.
Mr. Bean filed a claim, and Foremost determined that it owed him $12,139.73 for repairs to his home. Foremost issued a check in that amount on October 19, 2004, payable to both Mr. Bean and Mr. Prevatt.
Mr. Bean approached Mr. Prevatt about signing the check so that Mr. Bean could use the proceeds to repair his mobile home. Mr. Prevatt refused to allow Mr. Bean to use this check to repair his mobile home. Instead, Mr. Prevatt demanded that Mr. Bean release the entire insurance settlement to him to apply to the principal balance of the mortgage indebtedness. This payment would effectively prepay the loan from Mr. Prevatt through approximately January 2016.[1] Understandably, Mr. Bean wanted to fix his roof; he did not want to prepay his mortgage.
When the two men could not resolve this dispute, Mr. Prevatt filed an action to foreclose on the property. Mr. Bean retained a lawyer who filed an answer and a counterclaim for declaratory relief to determine rights to the insurance settlement. During the evidentiary hearing held before the trial court on these competing claims, the trial judge expressed concern for the apparent "Catch-22" in which Mr. Bean had been trapped:
THE COURT: Well, one of the issues that concerns me is the contract also doesn't allow waste to occur. Is there any claim or potential future claim by [Mr. Prevatt] that they're entitled to foreclose because of waste?
COUNSEL FOR MR. PREVATT: No, sir, not in this action.
THE COURT: Or future action?
COUNSEL FOR MR. PREVATT: (No response).
Mr. Bean's lawyer was successful in preventing the foreclosure, but the trial court determined after the evidentiary hearing that Mr. Prevatt was entitled to all of the proceeds from the insurance settlement pursuant to the above-quoted provision in the contract, as well as attorneys' fees and costs pursuant to another provision in the contract. However, the trial court ruled that, as a result of this judgment, Mr. Prevatt would be estopped from foreclosing on the property in the future based on Mr. Bean's failure to repair the property.[2]
Mr. Bean has represented himself in this appeal. He argues primarily that the check was for hurricane damage and that *560 the language of his agreement with Mr. Prevatt only requires that he insure the mobile home for "windstorm and tornado" damage. He claims that he was not required to insure the property for hurricane damage and should be entitled to keep this check.
The argument that Mr. Bean makes on appeal was not properly preserved in the trial court. Even if this issue were preserved, the trial court's ruling was legally correct. Hurricane losses are covered either by windstorm or flood insurance. See, e.g., Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc., 874 So.2d 26 (Fla. 2d DCA 2004); Mierzwa v. Fla. Windstorm Underwriting Ass'n, 877 So.2d 774 (Fla. 4th DCA 2004). Although special deductibles may sometimes apply in the event of a hurricane, there is no standard policy that covers the risk of "hurricane." It is clear that Foremost paid this claim under standard windstorm coverage. Thus, Mr. Bean cannot avoid the language of the agreement by arguing that the insurance check is not proceeds from a windstorm policy.
The agreement between Mr. Prevatt and Mr. Bean was an agreement for deed, but the relevant language is common in many standard mortgage agreements. Mr. Bean was obligated to keep the buildings on his property "insured against loss by fire, windstorm and tornado" to the extent of the value of such improvements and agreed "that the proceeds of any such insurance policies shall be applied to the payment of the indebtedness herein, or at the option of the first party, to the repair or replacement of the improvements upon said property." Thus, as long as the outstanding indebtedness on the agreement exceeds the amount of the insurance settlement, the agreement gives Mr. Prevatt the sole and unfettered right to decide whether the insurance payment is used to repair Mr. Bean's home. This is true, even though it would appear that Mr. Prevatt's security interest in the property may be better protected by repairing the property rather than by accepting a partial payment of the mortgage.
Mr. Bean has not argued either before the trial court or on appeal that such a clause is invalid or unenforceable, nor is there any Florida case law that would appear to directly support such an argument.[3] It should be obvious, however, that the economies of many Florida communities would have been devastated in 2004 if lenders had uniformly followed Mr. Prevatt's lead. Fortunately, it appears that most lenders place such money into escrow and merely monitor the funds to assure that they are used to repair the properties that serve as collateral for their loans.
Given the facts of this case, however, the legislature may want to reasonably regulate these types of mortgage clauses to protect homeowners from unscrupulous lienholders who may seek to obtain the entire amount of the insurance proceeds without permitting necessary repairs, even when that decision may impair their security interest and may force the homeowner into default of other mortgage provisions. Some relatively simple regulations in this regard would ensure that communities are able to rebuild in the aftermath of serious storms.[4]
*561 We sympathize with Mr. Bean's plight. Nevertheless, the plain language of the agreement for deed provides that Mr. Prevatt has the sole discretion to determine how the insurance proceeds are applied.
Affirmed.
DAVIS and CANADY, JJ., Concur.
NOTES
[1] The agreement for deed permitted prepayment of "all or any portion of the unpaid balance . . . with liability for interest to the date of prepayment only."
[2] This holding is supported by case law. See Lamb v. Pike, 659 So.2d 1385 (Fla. 3d DCA 1995).
[3] For a general discussion on other jurisdictions' decisions on the enforcement of such clauses, see Patrick A. Randolph, Jr., Mortgagees' Interests in Casualty Loss Proceeds: Evolving Rules and Risks, Practising Law Institute, Real Estate Law and Practice Course Handbook Series, at 427 (May 1997).
[4] Certainly, a lienholder is entitled to protect its security interest in property. In cases in which that security interest is impaired by a casualty and cannot be adequately protected by repair to the property, the lienholder should retain the right to apply insurance proceeds to the principal of the debt. To balance adequately the legitimate interests of the lienholder and those of the homeowner, the legislature might consider a statute providing that a lender may not apply insurance proceeds solely to the principal indebtedness without permitting repair if (1) the borrower is not in default at the time of the casualty, (2) there are sufficient funds to complete the necessary repairs in accordance with state and local building regulations, (3) the repairs can be made within a reasonable time (e.g., within a year), and (4) the repaired value of the property will exceed the amount of the remaining principal on the loan.